**IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE**

**AT JACKSON**

**JULY SESSION, 1997**

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | **)** | **C.C.A. NO. 02C01-9704-CC-00132** |
| | **)** | |
| Appellee, | **)** | |
| | **)** | |
| | **)** | **CARROLL COUNTY** |
| **VS.** | **)** | |
| | **)** | **HON. C. CREED MCGINLEY** |
| **MAURICE PIERRE TEAGUE,** | **)** | **JUDGE** |
| | **)** | |
| Appellant. | **)** | (Aggravated Burglary) |

FILED

August 27, 1997

Cecil Crowson, Jr.
Appellate Court Clerk

**ON APPEAL FROM THE JUDGMENT OF THE
CIRCUIT COURT OF CARROLL COUNTY**

FOR THE APPELLANT:

STEPHEN D. JACKSON
161 Court Square
P.O. Box 471
Huntingdon, TN 38344

FOR THE APPELLEE:

JOHN KNOX WALKUP
Attorney General and Reporter

KENNETH W. RUCKER
Assistant Attorney General
Cordell Hull Building, 2nd Floor
425 5th Avenue North
Nashville, TN 37243-0493

ROBERT RADFORD
District Attorney General

ELEANOR CAHILL
Assistant District Attorney General
P.O. Box 686
Huntingdon, TN 38344

OPINION FILED _____

AFFIRMED

DAVID H. WELLES, JUDGE

# OPINION

This is an appeal as of right pursuant to Rule 3, Tennessee Rules of Appellate Procedure. The Defendant, Maurice Pierre Teague, was convicted by a Carroll County jury of aggravated burglary[1]. The trial court sentenced him as a Range I offender to six years in the Department of Correction. The Defendant appeals both his conviction and his sentence and raises the following issues in this appeal: (1) That the evidence was insufficient to convict the Defendant of aggravated burglary when the jury acquitted him of aggravated assault; (2) that the trial court erred in applying certain sentence enhancement factors; and (3) that the indictment was fatally flawed. We affirm the judgment of the trial court.

The State presented the following proof at trial. The tumultuous events leading to the Defendant's conviction revolve around the home of Susan Hollowell in Huntingdon. Ms. Hollowell testified that, in the early morning hours of December 13, 1995, she was at her home, a public housing facility into which she had just moved. Also present were her children; her two-year-old daughter and her three-month-old son. Randy Cary knocked on the door and she let him in and they talked for a while. Ms. Hollowell had known Cary for a number of years and had a personal relationship with him in the past. An hour or so later, someone knocked at the door. Cary told Ms. Hollowell not to answer it because it was the Defendant and he did not want to talk to him. Approximately an hour later, about 3:00 a.m., Steven Gibbs, Billy Ted Little, and a stranger arrived. Ms. Hollowell and Gibbs had more recently been seeing each other in a personal

---

[1] Tenn. Code Ann. § 39-14-403(a).

relationship. Gibbs wanted to come in and lie down because he and the others had been drinking at a bar in Jackson, Tennessee. She let the three in and they and Cary talked. The stranger left shortly after they arrived. Gibbs smelled like he had been drinking and Little appeared obviously drunk. They argued because Little wanted to leave. Gibbs took Little to a pay telephone because Ms. Hollowell did not have a phone. They returned and Cary and Little exchanged words. Little started a fight with Cary. They struggled on the floor until Gibbs broke them up. Cary left the house.

A few minutes later, Cary returned with his brother, Terry Cary, the Defendant, David Myles and a fifth person (Marshall Hampton). Gibbs and Little hid in the bathroom after the five called into the house for them to come out. Ms. Hollowell talked with the men through the window, but refused to let them in. She turned and walked to the back of the house when she heard a front window break. She saw Randy Cary with a two-by-four piece of lumber. Cary also pulled a gun. At that point, the Defendant stated: "Pop a cap in her." The men came in the house and Ms. Hollowell headed to the back bedroom with the children. Cary handed the gun to the Defendant. The five were yelling at Gibbs and Little in the bathroom to come out. The men broke open the door with the two-by-four and began fighting Gibbs and Little. Little had a whiskey bottle. Ms. Hollowell did not see if the Defendant still had the gun during the fight in the house. The men left and she helped Gibbs and Little, who were injured.

Steven Gibbs also testified at trial. He and Little went to Ms. Hollowell's house to visit because he had been dating her. He did not know Cary before the incident. Little was drunk and got into an argument with Cary. They scuffled and

he broke up the fight. Cary left. Gibbs helped Little clean up his bloodied mouth and Ms. Hollowell asked them to leave. When they tried to leave, they saw Cary and the other men outside. Gibbs and Little went to the bathroom. Gibbs heard the window break and Ms. Hollowell talking to them. He heard someone say "shoot her" or "shoot the bitch." Ms. Hollowell let them in and the group began beating on the bathroom door.

Gibbs testified that he grabbed a whiskey bottle and that Little had a large "Rambo" knife. After the group broke down the bathroom door, Little saw the gun and laid down the knife. Cary hit Gibbs with the two-by-four while he was on the floor. Gibbs managed to get up, but was hit from behind and others took turns kicking him. Teague took the gun, pointed it at Gibbs head, and said "How's it feel to be on the ground, white boy?" Gibbs' eye, arm and knee were injured in the fight.

On cross-examination, Gibbs admitted that he was dating Ms. Hollowell while he was separated from his wife, but said that they were reunited at the time of trial. He stated that someone broke open the door to his house sometime after the incident in question. He denied an allegation by Cary that he and Little took Cary's money during the first scuffle. Gibbs also testified that he never saw a gun when the group was outside the house and could not positively identify the voice saying "shoot the bitch" as the Defendant's. Gibbs saw the Defendant with a gun after the men broke open the bathroom door. On redirect, Gibbs stated that Little had money that night because Gibbs was taking him to court the next day and he had the money to pay a fine.

Officer Johnny Ray Hill of the Huntingdon Police Department testified that he interviewed the Defendant. The Defendant admitted hitting Little and that, during the brawl, someone dropped a gun and he picked it up and placed it in his waistband. The Defendant stated that he was called to come over to the house because someone took money and they thought Gibbs and Little had cocaine.

The Defendant testified in his own behalf. He stated that Marshall Hampton called him and said Cary had been assaulted and robbed and to meet at Hampton's house. Hampton's house was just down the street from Ms. Hollowell's house. The Defendant denied that he had any intention to fight, that he had a gun, that he said "Pop a cap in her," or that he broke the window of the house. He testified that he followed Cary in the house and that Cary was telling Gibbs and Little to return the money. He stated that he first obtained the gun after it was dropped during the scuffle. He put the gun in his pants. He admitted hitting Little after Little first hit him in the face. He also admitted to pulling Gibbs off Cary.

On cross-examination, the Defendant denied pointing a gun at Gibbs, but admitted that Gibbs got into a corner and said "Please don't kill me." The Defendant denied going into the house to beat up the men, but admitted going in to get the money back and "so that he [Cary] wouldn't be jumped on again." He denied that the group had the intent to fight. The Defendant denied that anyone pointed a gun at Ms. Hollowell when they were standing outside the house.

Randy Cary testified that he went to Hollowell's house to visit. He knew she was awake because he talked to her boyfriend, Daniel Alton, after he saw him leaving Hollowell's house. He stated that he had dozed off in a recliner when Gibbs, Little and a stranger showed up. They exchanged words, left, and returned and "jumped" him. They took some money from his jacket pocket and a house key. Cary left the house and organized the group, including the Defendant. They went to Hollowell's house. Cary admitted to carrying a gun at that time. He denied that the Defendant possessed a gun. Cary testified that he had no intention to fight, but he wanted to get his money back. He stated that he took his gun out of his jacket pocket and loaded one bullet and David Myles said "Pop a cap in her." Ms. Hollowell saw the gun at that point. He testified that the gun was lost during the fight and that David Myles returned it to him.

The Defendant was charged with one count of aggravated burglary and three counts of aggravated assault. The jury acquitted the Defendant on each count of aggravated assault, but convicted him of aggravated burglary. The Defendant now appeals his conviction and sentence.

We first address the Defendant's third issue, that the indictment was fatally flawed. The indictment charging the Defendant with aggravated burglary in this case is as follows:

> That RANDY L. CARY, TERRY RAY CARY, DAVID EARLE MYLES, MAURICE PIERRE TEAGUE and MARSHALL HAMPTON, heretofore, ON OR ABOUT THE 13TH DAY OF DECEMBER, 1995, before the finding of this indictment, in the County and State aforesaid, did intentionally or knowingly enter the habitation of SUSAN HOLLOWELL, 109 DREW COURT, HUNTINGDON, CARROLL COUNTY, TENNESSEE without the owner's effective consent, with intent to commit a felony, thereby committing the offense of AGGRAVATED

BURGLARY, in violation of T.C.A. 39-14-403(a), against the peace and dignity of the State of Tennessee.

(emphasis added). The Defendant asserts that the indictment is defective because it does not specify the felony intended to be committed.

An indictment or presentment must provide notice of the offense charged, an adequate basis for the entry of a proper judgment, and suitable protection against double jeopardy. State v. Trusty, 919 S.W.2d 305, 310 (Tenn. 1996); State v. Byrd, 820 S.W.2d 739, 741 (Tenn. 1991); State v. Lindsay, 637 S.W.2d 886, 890 (Tenn. Crim. App. 1982). The indictment "must state the facts in ordinary and concise language in a manner that would enable a person of common understanding to know what is intended, and with a degree of certainty which would enable the court upon conviction, to pronounce the proper judgment." Warden v. State, 214 Tenn. 391, 381 S.W.2d 244, 245 (1964); Tenn. Code Ann. § 40-13-202.

A lawful accusation is an essential jurisdictional element, thus, a prosecution cannot proceed without an indictment that sufficiently informs the accused of the essential elements of the offense. State v. Perkinson, 867 S.W.2d 1, 5 (Tenn. Crim. App. 1992); State v. Morgan, 598 S.W.2d 796, 797 (Tenn. Crim. App. 1979). A judgment based on an indictment that does not allege all the essential elements of the offense is a nullity. Warden v. State, 381 S.W.2d at 245; McCracken v. State, 489 S.W.2d 48, 53 (Tenn. Crim. App. 1972).

The State argues that the Defendant has waived consideration of the issue on appeal because he did not raise the issue prior to trial. Rule 12(b)(2) of the

Tennessee Rules of Criminal Procedure provides that "[d]efenses and objections based on defects in the indictment . . . other than that it fails . . . to charge an offense" must be raised in a pretrial motion. Tenn. R. Crim. P. 12(b)(2). Furthermore, failure to raise defenses and objections pretrial constitutes a waiver. Tenn. R. Crim. P. 12(f). We note the waiver rule does not apply when an indictment fails to charge an essential element of an offense because no offense has been charged. State v. Perkinson, 867 S.W.2d 1, 5-6 (Tenn. Crim. App. 1992).

In the case at bar, the Defendant has not alleged that the indictment fails to charge an offense. Rather, he claims that the indictment has failed to describe the offense with the "degree of certainty" required and therefore the indictment is void. Aggravated burglary is burglary of a habitation as defined in sections 39-14-401 and 39-14-402. Tenn. Code Ann. § 39-14-403(a). "A person commits burglary who, without the effective consent of the property owner: (1) Enters a building other than a habitation (or any portion thereof) not open to the public, with intent to commit a felony, theft or assault." Tenn. Code Ann. § 39-14-402(a) (emphasis added). The Defendant cites State v. Haynes, 720 S.W.2d 76 (Tenn. Crim. App. 1986), quoting Hooks v. State, 289 S.W. 529, 529 (Tenn. 1926), which states that an indictment for burglary "must set out and define the felony intended to be committed." Hooks, 289 S.W. at 529.

The Defendant has first raised the issue in his appeal. Because he failed to raise the issue pretrial as required by Rule 12(b), this issue has been waived. Moreover, the Defendant could have, but did not file a motion for a bill of particulars pursuant to Rule 7(c) of the Rules of Criminal Procedure to clarify the

offense with which he was charged. See State v. Joyner, 759 S.W.2d 422, 424-25 (Tenn. Crim. App. 1987). Instead, he clearly proceeded to trial with a defense that he had no intent to commit any of the assaults when he arrived at the house. We believe the Defendant has waived any consideration by this Court of this issue.

The Defendant also challenges the sufficiency of the evidence convicting him of aggravated burglary. He contends that because he was acquitted of all aggravated assault charges, the burglary conviction cannot stand because the assaults were the underlying felonies comprising an element of the offense of burglary.

When an accused challenges the sufficiency of the convicting evidence, the standard is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979). Questions concerning the credibility of the witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence, are resolved by the trier of fact, not this court. State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). Nor may this court reweigh or reevaluate the evidence. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978).

A jury verdict approved by the trial judge accredits the State's witnesses and resolves all conflicts in favor of the State. State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). On appeal, the State is entitled to the strongest legitimate

view of the evidence and all inferences therefrom. <u>Cabbage</u>, 571 S.W.2d at 835. Because a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, the accused has the burden in this court of illustrating why the evidence is insufficient to support the verdict returned by the trier of fact. <u>State v. Tuggle</u>, 639 S.W.2d 913, 914 (Tenn. 1982); <u>Grace</u>, 493 S.W.2d at 476.

We first address the contention that, because the jury acquitted the Defendant of all aggravated assault charges, the evidence to convict for aggravated burglary is insufficient. The Defendant challenges the sufficiency of proof of the element that he entered a habitation without consent "with intent to commit a felony." Tenn. Code Ann. § 39-14-402(a)(1). The crime of burglary is complete and has been committed when an entry has been made without consent and with the intent to commit a felony once inside. <u>State v. Lindsay</u>, 637 S.W.2d 886, 889 (Tenn. Crim. App. 1982). The eventual consummation of the intended crime is not required to support a conviction for aggravated burglary. See <u>Petree v. State</u>, 530 S.W.2d 90, 92 (Tenn. Crim. App. 1975).

> The intent requirement is general in nature and there is no need to prove that the intruder succeeded in carrying out the intent for which the structure was broken into. Therefore, if one breaks into the dwelling of another with the intent to commit murder or any other felony he is guilty of burglary even if he leaves without finding his intended victim or without having committed any felony in the dwelling.

<u>Id.</u> (quoting <u>Duchac v. State</u>, 505 S.W.2d 237, 239-40 (Tenn. 1973)(citations omitted)). Thus, it is of no consequence that the Defendant in the case <u>sub judice</u> was acquitted of the actual aggravated assaults.

The Defendant also makes a general argument that the proof was insufficient to show an intent on his part to commit an assault when he entered Ms. Hollowell's house. He highlights the facts that he and Randy Cary both testified that they went to the house only to get Cary's money. He notes that Cary testified that no assaults would have occurred if Gibbs and Little had simply returned the money. Yet, we are mindful that the intent to commit a felony may be proved by circumstantial evidence. Hall v. State, 490 S.W.2d 495, 496 (Tenn. 1973); State v. Chrisman, 885 S.W.2d 834, 838 (Tenn. Crim. App. 1994).

On appeal we must consider the evidence in the light most favorable to the State. Obviously the jury rejected the Defendant's proffered reason for entering Ms. Hollowell's house. There is evidence in the record that the Defendant joined a group of men organized by Randy Cary after he got into a fight with Billy Ted Little. There is evidence that Cary was angry with both Gibbs and Little. The group of men arrived with Cary holding a two-by-four board. There is also evidence that Cary had a handgun and that the Defendant stated: "Pop a cap in her." Both Ms.Hollowell and Gibbs testified that the crowd outside was yelling for the two men to come outside. None of the State's witnesses testified that Cary or the others were at the house to get Cary's money back. There is also evidence that Cary smashed a window and that, once inside the house, the group of men hit and kicked Gibbs and Little.

In considering the evidence in the record, we conclude that the jury could have found beyond a reasonable doubt that the Defendant entered Ms. Hollowell's house with the intent to exact retribution for Cary by assaulting Gibbs and Little. We also note that the trial judge charged the jury with criminal

responsibility for the conduct of another and the lesser offense of facilitation of a felony. Tenn. Code Ann. §§ 39-11-402; 39-11-403. The jury could have convicted of the lesser offense, but chose to convict the Defendant for the greater offense. Furthermore, the jury could have convicted the Defendant based on criminal responsibility for the conduct of another. This would only require that the Defendant acted "with intent to promote or assist the commission of the offense." Tenn. Code Ann. § 39-11-402. The jury could reasonably infer that the Defendant acted with the intent to assist Cary with entering the house to assault the victims. In any event, we can only speculate regarding the theory upon which the jury relied. In either case, the evidence was sufficient to support a finding of guilt. This issue is without merit.

Finally, the Defendant argues that the trial court imposed an excessive sentence by misapplying two sentence enhancement factors. When an accused challenges the length, range, or the manner of service of a sentence, this court has a duty to conduct a de novo review of the sentence with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).

In conducting a de novo review of a sentence, this court must consider: (a) the evidence, if any, received at the trial and the sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) any statutory mitigating or enhancement factors; (f) any statement

-12-

that the defendant made on his own behalf; and (g) the potential or lack of potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-102, -103, and -210; see State v. Smith, 735 S.W.2d 859, 863 (Tenn. Crim. App. 1987).

If our review reflects that the trial court followed the statutory sentencing procedure, imposed a lawful sentence after having given due consideration and proper weight to the factors and principals set out under the sentencing law, and that the trial court's findings of fact are adequately supported by the record, then we may not modify the sentence even if we would have preferred a different result. State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

The Defendant's sentencing hearing was conducted on October 9, 1996. His presentence report indicates that, at the time of sentencing, he was twenty-four years old and single. He dropped out of high school in the eleventh grade. It reflects that the Defendant had nearly thirty misdemeanor convictions as an adult and more as a juvenile. He denied regular alcohol or drug abuse, yet some of his convictions were for possession of drugs. The Defendant reported a sporadic employment history. He had one uncle living in McKenzie and a four-year-old daughter in Trenton.

At the sentencing hearing, the State proposed six enhancement factors of which the trial court found five to be applicable. Those applied were that (1) The defendant has a previous history of criminal convictions; (8) The defendant has a previous history of unwillingness to comply with the conditions of a sentence involving release in the community; (9) The defendant possessed or employed a firearm during the commission of the offense; (10) The defendant had no

hesitation about committing a crime when the risk to human life was high; and (13)(c) The felony was committed while the defendant was on probation. Tenn. Code Ann. § 40-35-114(1),(8),(9),(10),(13)(c). The trial court considered and rejected the application of any mitigating factors.

The trial court also evaluated the Defendant's amenability to alternative sentencing pursuant to Tennessee Code Annotated section 40-35-102. The trial court refused alternative sentencing based on the Defendant's past criminal history, including a disrespect for the law manifested in convictions for failure to appear and escape. Aggravated burglary is a Class C felony and the sentence range a Range I offender is three to six years. Tenn. Code Ann. §§ 39-14-403(b); 40-35-101. The trial court sentenced the Defendant to the maximum in the range of six years in the Department of Correction.

The Defendant argues that the trial court erred by applying enhancement factors (9), that the Defendant possessed or employed a firearm during the commission of the offense and (10) that the Defendant had no hesitation about committing a crime when the risk to human life was high. Tenn. Code Ann. § 40-35-114(9),(10). We agree with the Defendant's contention that the trial court misapplied enhancement factor (9), but we do not reach our conclusion based on the Defendant's reasoning. He argues that, because he was acquitted of the aggravated assaults, the use of a weapon cannot be used to enhance the burglary conviction. The State counters that two of the aggravated assault charges were based on serious bodily injury rather than use of a weapon.

However, a careful review of the record reveals that there is simply no evidence that the Defendant possessed the gun during the perpetration of the aggravated burglary. Ms. Hollowell testified that Cary handed the gun to the Defendant after they entered the house. Gibbs testified that he saw the Defendant with a gun when the group broke down the bathroom door. The Defendant denied having a gun until he picked it up during the scuffle. Cary testified that he had possession of the gun in his pants when the group entered the house. As we have previously stated, the crime of burglary is complete and has been committed when an entry has been made without consent and with the intent to commit a felony once inside. Lindsay, 637 S.W.2d at 889. Thus, because the record is devoid of evidence that the Defendant possessed or employed a weapon while effecting the entry into Ms. Hollowell's home, the application of factor (9) was error. We do not believe the proof sufficiently links the gun to the Defendant to allow enhancement based on this factor. We conclude, however, that the error was harmless.

Next, the Defendant contends that the trial court misapplied enhancement factor (10), that he committed a crime when the risk to human life was high. He argues that this was an element of the aggravated assaults of which he was acquitted, therefore, the trial court could not apply it to the aggravated burglary. We disagree. See State v. Jones, 883 S.W.2d 597, 603 (Tenn. 1994). This Court has held that a burglary conviction may be enhanced using factor (10) when the circumstances create a risk to human life. See State v. John L. Goodwin, III, C.C.A. No. 01C01-9601-CR-00013, Sumner County (Tenn. Crim. App., Nashville, Jul. 23, 1997); State v. Jimmy Ray Potter, C.C.A. No. 01C01-9301-CC-00021, Fentress County (Tenn. Crim. App., Nashville, Mar. 17, 1994);

cf. State v. Avery, 818 S.W.2d 365, 369 (Tenn. Crim. App. 1991). Here, the Defendant was part of a group of men who brandished weapons, smashed in a window, and threatened to shoot a woman, all while she was visible through the window holding her three-month-old-son. The Defendant knew that the men they sought were in the home and an entry would likely result in a confrontation. This, we feel, is sufficient proof to support the application of enhancement factor (10).

Even though we conclude that the trial court misapplied one enhancement factor, we believe the remaining enhancement factors justify the sentence of six years in the Department of Correction.

The judgment of the trial court is affirmed.

_____
DAVID H. WELLES, JUDGE

CONCUR:

_____
JOE B. JONES, PRESIDING JUDGE

_____
JOE G. RILEY, JUDGE