## IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

### AT NASHVILLE

### MAY 1999 SESSION

FILED

October 29, 1999

Cecil Crowson, Jr.

Appellate Court Clerk

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | * | No. |
| 01C01-9807-CC-00304 | | |
| | | |
| **Appellee** | * | |
| WILLIAMSON COUNTY | | |
| | | |
| **V.** | * | Hon. |
| Henry Denmark Bell, Judge | | |
| | | |
| **MICHAEL A. BRASWELL,** | * | |
| (Aggravated Burglary, Theft) | | |
| | | |
| **Appellant.** | * | |

For Appellant

Eugene J. Honea
Assistant Public Defender
P.O. Box 68
Franklin, TN 37065-0068

For Appellee

Paul G. Summers
Attorney General and Reporter
425 Fifth Avenue North
Nashville, TN 37243-0493

Elizabeth B. Marney
Assistant Attorney General
425 Fifth Avenue North
Nashville, TN 37243-0493

Derek Smith
Assistant District Attorney
P.O. Box 937
Franklin, TN 37065-0937

OPINION FILED:

AFFIRMED IN PART; JUDGMENT MODIFIED

NORMA MCGEE OGLE, JUDGE

**OPINION**

On December 11, 1997, the appellant, Michael A. Braswell, pled guilty in the Williamson County Circuit Court to one count of theft upon the understanding that the trial court would determine his sentence. The following day a jury additionally found him guilty of aggravated burglary. Following a sentencing hearing on July 24, 1998, the trial court imposed concurrent sentences of four years incarceration in the Tennessee Department of Correction for the aggravated burglary conviction and two years incarceration for the theft conviction. On appeal, the appellant challenges the sufficiency of the evidence underlying his conviction of aggravated burglary and also appeals his sentences for both aggravated burglary and theft. Following a thorough review of the record and the parties' briefs, we affirm the judgment of the trial court in the aggravated burglary case and affirm in part and modify the judgment of the trial court in the theft case.

## I. Factual Background

The appellant and his co-defendant, Jasper Hatcher, were tried jointly for the aggravated burglary of Charles Crawford's home.[1] The evidence adduced at trial established that, on April 10, 1997, Charles Crawford returned to his Brentwood home in Williamson County after work to find that several tools were missing from his garage, including an electric drill, a sheet or palm sander, a belt sander, a circular saw, a jigsaw, a reciprocating saw, a chain saw, and a battery charger.

At the appellant's trial, Mr. Crawford testified that he lives with his wife and three children. His house is built into the side of a hill and has three levels, including the garage, which serves primarily as a basement and contains laundry facilities, various household items, and Mr. Crawford's tools. The garage has garage doors leading outside and also a door leading into the Crawford's living quarters. Mr. Crawford testified that, prior to the burglary of his home, the family habitually neglected to lock these doors.

---

[1]Mr. Hatcher chose to also submit to the jury the issue of his guilt or innocence of theft of property.

On the day of the appellant's offenses, Mr. Crawford left his home through the garage. At that time, he noticed that his tools were in their customary location. Mr. Crawford left the garage door open behind him, because several family members were still inside the house. Mr. Crawford testified that, as a general rule, the last member of his family to leave the house closed the garage door. However, when he returned home that evening at 5:30 or 6:00 p.m., nobody was home, the garage door was open, and his tools were missing.

Mr. Crawford notified the Williamson County Sheriff's Department of the burglary and provided serial identification numbers and descriptions for the stolen items. Roddy Parker, a detective with the Sheriff's Department, subsequently recovered five of the stolen items from two pawnshops located in Davidson County. The recovered tools included the circular saw, the jigsaw, the reciprocating saw, the belt sander, and the chain saw. Mr. Crawford positively identified these items at trial.

Mr. Crawford additionally related to the jury that he had known the appellant for six or seven years. The appellant was a friend of his son, Justin, had visited the Crawford's home on numerous occasions, and had been inside the garage. Mr. Crawford further indicated that the appellant's co-defendant, Jasper Hatcher, was also an acquaintance of his son, but Mr. Crawford did not recall that Mr. Hatcher had ever visited his home. Mr. Crawford concluded that he had never given either the appellant or Mr. Hatcher permission to take any tools from his garage.

In addition to Mr. Crawford's testimony, the State also presented the testimony of Autumn Alley, the appellant's girlfriend. She testified that, on the morning of April 10, 1997, she and the appellant were at her home in Unionville, Tennessee, when the appellant's co-defendant, Jasper Hatcher, paged the appellant. After the appellant telephoned Mr. Hatcher, he and Ms. Alley drove in the appellant's car to Mr Hatcher's residence in Davidson County. According to Ms.

3

Alley, Mr. Hatcher indicated that Justin Crawford had stolen his car radio. He asked the appellant to provide directions to the Crawford residence in order that Mr. Hatcher could search Justin's car for the radio. The group then proceeded in Mr. Hatcher's car to Justin Crawford's house. Ms. Alley asserted that no one stated any intention to steal any items from the Crawford residence.

Ms. Alley further recounted that, when the group arrived at the Crawford residence, they did not see Justin's car. She asserted that, while she and the appellant waited inside Mr. Hatcher's car, Mr. Hatcher got out of the car and approached the garage door, which was closed. Mr. Hatcher opened the door and went inside the garage, quickly reemerging with several tools. After placing the tools in the trunk of his car, he returned to the garage for more tools. Following his second trip, Mr. Hatcher got back into his car and drove the group back to Davidson County. Again, Ms. Alley insisted at trial that neither she nor the appellant ever left Mr. Hatcher's car while at the Crawford residence.

After the burglary, the group drove to several pawnshops on Nolensville Road in Davidson County. Ms. Alley related that, at the first pawnshop, both the appellant and Mr. Hatcher attempted to pawn the chain saw. However, because they were unable to operate the saw, the pawnshop refused to accept the item. They then drove to another pawnshop, where both the appellant and Mr. Hatcher successfully pawned several items. When they returned to the car, the appellant handed Mr. Hatcher approximately $60.00. Finally, the group drove to one last pawnshop. This time, Mr. Hatcher entered the shop alone, stating that he knew someone inside the shop. Afterwards, the group returned to Mr. Hatcher's house, and the appellant and Ms. Alley proceeded to Ms. Alley's orthodontist appointment.

Ms. Alley conceded that she never informed anyone what had happened until the appellant was arrested. She testified that she was in love with the appellant and explained that the appellant assisted Mr. Hatcher in pawning the tools only because Mr. Hatcher did not possess adequate identification. Ms. Alley

4

maintained that the appellant never received any portion of the money obtained in return for the various tools. She also testified that, sometime after the appellant's offenses, the appellant expressed regret for his cooperation with Mr. Hatcher, because he and Justin had been friends.

Mark Wiedeman, the manager of Cash America Pawn of Nashville, testified that his shop's business records reflect that, at 1:39 p.m. on April 10, 1997, Michael Braswell pawned a circular saw, a reciprocating saw, and a belt sander in return for seventy dollars ($70.00). The appellant presented a Tennessee driver's license for the purpose of identification. Mr. Wiedeman explained that customers are required to present some form of identification, usually a driver's license, in order to pawn any item. The customer's identity and a description of the pawned item are then routinely provided to the police department.

Alexander O'Kieff, the manager of Easy Money Pawn & Loan, also testified on behalf of the State. He stated that his shop's business records reflect that, at 2:19 p.m. on April 10, 1997, Jasper Hatcher sold a chain saw and a jigsaw for forty dollars ($40.00). Mr. Hatcher provided proof of his identity in the form of a valid driver's license. Mr. O'Kieff also personally recalled that both the appellant and Mr. Hatcher entered his shop on the date of these offenses. He stated that, to his knowledge, no one in the shop knew Mr. Hatcher. However, he recognized the appellant as a former customer.

The State concluded its proof with the testimony of Detective Roddy Parker of the Williamson County Sheriff's Department. Detective Parker testified that, upon his assignment to this case, he was able to quickly recover several of the stolen tools, because the serial identification numbers provided by the victim matched the numbers recorded on a pawn ticket furnished to the police by Cash America Pawn of Nashville. As a result of information obtained from this establishment, Detective Parker obtained an arrest warrant for the appellant.

5

On April 22, 1997, Detective Parker executed the arrest warrant at the appellant's home. Detective Parker testified that the appellant did not resist arrest and, after being advised of his <u>Miranda</u> rights, agreed to provide a statement to the police. The appellant indicated in his statement that, on the day of his offenses, a "Jay Thatcher" called him and requested his assistance in locating Justin Crawford's house. Mr. "Thatcher" expressed his belief that Justin Crawford had stolen his car radio and stated that he intended to break into Justin's car in order to retrieve the radio. Later that morning, Mr. "Thatcher" drove to the appellant's home in Davidson County and picked up the appellant and Ms. Alley. The group drove to the Crawford residence, but did not see Justin's car. The appellant informed Mr. "Thatcher" that Justin sometimes parks his car in the garage. Accordingly, Mr. "Thatcher" looked into the garage through a window but again did not see Justin's car. The appellant then suggested that the radio was inside the garage and informed Mr. "Thatcher" that the Crawfords did not lock the garage door. Mr. "Thatcher" opened the door, entered the garage, and soon reemerged with various tools. According to the appellant, Mr. "Thatcher" completed a total amount of two trips into the garage.

Immediately thereafter, the group drove to a pawnshop where the appellant pawned three items. The appellant asserted in his statement that Mr. "Thatcher" could not pawn the items, because his identification was "washed out." The appellant obtained seventy dollars ($70.00) in return for the three tools and gave the proceeds to Mr. "Thatcher." The group then stopped briefly at a McDonald's restaurant before returning to the appellant's residence. The following day, Mr. "Thatcher" informed the appellant that he had pawned the other items at another pawnshop. The appellant also recounted that, more recently, Mr. "Thatcher" visited his home and the appellant observed the stolen battery charger in the rear seat of Mr. "Thatcher's" car.

On April 23, 1997, Detective Parker again questioned the appellant, because he could not locate any "Jay Thatcher." The appellant stated that he was unsure of his companion's surname. Moreover, the appellant indicated that he

6

wished to change several items in his original statement. First, he conceded that he and Ms. Alley drove to Mr. Hatcher's home on the morning of the offense. Second, he admitted that he did get out of Mr. Hatcher's car at the Crawford residence, but maintained that he never entered the Crawford's garage. Third, the appellant admitted that, on April 10, he also accompanied Mr. Hatcher to Easy Pawn & Loan, where Mr. Hatcher pawned the chain saw and the jigsaw.

Upon providing this additional information, the appellant directed Detective Parker to Easy Pawn & Loan. Due to information obtained from this establishment, Detective Parker was able to arrest Mr. Hatcher. Following Mr. Hatcher's arrest, Detective Parker recovered the stolen battery charger from the trunk of Mr. Hatcher's car.

The appellant declined to testify at trial. However, Mr. Hatcher elected to testify. Mr. Hatcher stated that he was twenty-one years old and did not possess a criminal record, other than several traffic violations. He is a high school graduate and was employed by New Beginnings Credit Association on the date of the instant offenses. He earned five dollars ($5.00) to nine dollars ($9.00) per hour. Moreover, he did not owe any significant debts.

According to Mr. Hatcher, he first met the appellant in February of 1997, several months before these offenses. He also knew Justin Crawford, but not as well as he knew the appellant. Mr. Hatcher had been to Justin's house several times, although he had never met Justin Crawford's father and had never been inside the Crawfords' garage. Mr. Hatcher asserted that he knew the directions to Justin's house from his own house and did not require directions from the appellant. He did concede that, prior to these offenses, he and the appellant discussed the Crawfords' habit of leaving their garage unlocked.

According to Mr. Hatcher, on April 10, 1997, the appellant telephoned him and informed him that the appellant was coming to his house. The appellant

7

arrived at his house one and one half hours later, accompanied by Ms. Alley. The appellant asked Mr. Hatcher to drive him to Justin's house in order to retrieve the keys to his tire rims, which he believed were in Justin's car. The appellant additionally complained that Justin had previously borrowed his tire rims and had damaged them. In any event, Mr. Hatcher agreed to drive the appellant to the Crawford residence.[2]

When the group arrived at the Crawford residence, Justin's car was not there. The appellant got out of the car, looked into the garage through a window, opened the garage door, and entered. Mr. Hatcher next observed the appellant walking from the rear of the Crawford residence. He assumed that the appellant had entered the Crawford's living quarters and had exited the house through another door. The appellant again entered the garage and began carrying out numerous tools, which he placed primarily in the rear of Mr. Hatcher's car, on the floorboard. At the appellant's request, Mr. Hatcher then drove the appellant and Ms. Alley to Mr. Hatcher's house, where the appellant had parked his car. Upon retrieving his driver's license from his car, the appellant directed Mr. Hatcher to drive to several pawn shops, where they pawned the stolen tools.

Mr. Hatcher asserted at trial that, at the time of the offenses, he assumed that the appellant had permission to take the tools and pawn them.[3] Additionally, he testified that he pawned the chain saw and the jigsaw at Easy Pawn & Loan because the appellant did not know how to operate the chain saw in order to demonstrate its condition to the pawnshop employee. With respect to the battery charger recovered from his car, he asserted that he was not aware that the appellant had left the item in his car, although he admitted that he probably moved the battery charger from the back seat of his car to his trunk at some point following

---

[2]Mr. Hatcher denied that he wished to go to the Crawford residence because he suspected Justin of stealing his car radio. Mr. Hatcher explained that his car radio was stolen while his car was in a repair shop in Brentwood, and he had no reason to believe that Justin had committed the theft. According to Mr. Hatcher, he reported the theft to the Brentwood police.

[3]According to Mr. Hatcher's statement to the police, the appellant informed him that he was taking the tools in repayment for the damage to his tire rims.

8

these offenses. Mr. Hatcher denied knowing the location of the electric drill and the palm sander, neither of which tools were ever recovered by the police. Finally, he asserted that he did not receive any proceeds from the pawning or sale of Mr. Crawford's tools.

## II. Analysis

### A.     Motion for Judgment of Acquittal

The appellant contends that, with respect to his conviction of aggravated burglary, the trial court erroneously denied his motion for a judgment of acquittal at the conclusion of the State's proof. A trial court must grant a motion for a judgment of acquittal if the evidence is legally insufficient to sustain a conviction of the charged offense. Tenn. R. Crim. P. 29. In making this determination, the trial court may not address the weight of the evidence, but must afford the State the strongest legitimate view of the evidence, including all reasonable inferences which may be drawn from the evidence. State v. Blanton, 926 S.W.2d 953, 957-958 (Tenn. Crim. App. 1996). An appellate court applies the same standard as the trial court when resolving issues predicated upon the grant or denial of a motion for judgment of acquittal. State v. Adams, 916 S.W.2d 471, 473 (Tenn. Crim. App. 1995). See also State v. Smith, No. 02C01-9506-CR-00157, 1999 WL 162958, at *2 (Tenn. Crim. App. at Jackson, March 25, 1999).

Tenn. Code. Ann. § 39-14-403 (1997) provides that a person commits aggravated burglary who, without the effective consent of the owner, enters a habitation with the intent to commit a theft. See also Tenn. Code. Ann. § 39-14-402(a)(1) (1997). Moreover, in the instant case, the trial court instructed the jury on criminal responsibility for the conduct of another pursuant to Tenn. Code. Ann. § 39-11-402(2) (1997), which provides,

> A person is criminally responsible for an offense committed by the conduct of another if:
> * * *
> Acting with intent to promote or assist the commission of the offense, or to benefit in the proceeds or results of the offense, the person solicits, direct, aids, or attempts to aid another person to commit the offense . . . .

9

The appellant first contends that the State failed to present any proof that the appellant entered the Crawford residence. However, this assertion does not absolve the appellant of criminal responsibility. Assuming that Mr. Hatcher entered the garage, the appellant is criminally responsible for the aggravated burglary if he acted with the intent to assist Mr. Hatcher in committing the offense and if he provided assistance to Mr. Hatcher. Tenn. Code. Ann. § 39-11-402(2).

The State's proof clearly established that the appellant assisted Mr. Hatcher in entering the Crawford residence. According to his own statement to the police, the appellant directed Mr. Hatcher to the Crawford residence and informed Mr. Hatcher that the garage door was unlocked. Thus, the only question is whether the appellant intended to assist Mr. Hatcher in entering the Crawford residence for the purpose of committing a theft.

A crime may be established by the use of circumstantial evidence alone. State v. Tharpe, 726 S.W.2d 896, 899-900 (Tenn.1987); Marable v. State, 313 S.W.2d 451, 456-457 (1958); State v. Knight, 969 S.W.2d 939, 941 (Tenn. Crim. App. 1997). Moreover, in all criminal cases, the one element which is most often proven by circumstantial evidence is the culpable mental state of the defendant. State v. Smith, No. 02C01-9602-CR-00051, 1997 WL 291179, at *3 (Tenn. Crim. App. at Jackson, June 3, 1997). As in the case of direct evidence, the weight to be given circumstantial evidence and "'[t]he inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence, are questions primarily for the jury.'" Marable, 313 S.W.2d at 457 (citation omitted). See also State v. Katz, No. 03C01-9704-CC-00150, 1998 WL 334378, at *3 (Tenn. Crim. App. at Knoxville, June 25, 1998), perm. to appeal denied, (Tenn. 1999).

Viewing the State's proof in a light most favorable to the State, the appellant in this case knew the Crawfords and had previously visited their home. Specifically, Mr. Crawford testified that the appellant had been in the garage from

which the tools were stolen. Moreover, the appellant was aware that the Crawfords kept the garage door unlocked and provided this information to Mr. Hatcher. On the day of the offense, the appellant provided Mr. Hatcher with directions to the Crawford residence. While he and Ms. Alley waited outside, Mr. Hatcher entered the garage and retrieved numerous tools. The group then proceeded immediately to several pawnshops where they pawned or sold the items for cash. At one pawnshop, the appellant conducted the transaction without the assistance or presence of Mr. Hatcher. Finally, in pleading guilty to theft prior to his trial for the charge of aggravated burglary, the appellant admitted that he was aware that the tools were stolen when he assisted in the sale or pawning of Mr. Crawford's property.

Generally, when a person enters an occupied dwelling which contains valuable property, without the permission of the owner, a jury is entitled to infer that the entry was made with the intent to commit a theft. State v. Chrisman, 885 S.W.2d 834, 838 (Tenn. Crim. App. 1994); State v. Burkley, 804 S.W.2d 458, 460 (Tenn. Crim. App. 1990); State v. Bogus, No. 02C01-9506-CC-00169, 1998 WL 22031, at *9 (Tenn. Crim. App. at Jackson), perm. to appeal denied, (Tenn. 1998). However, the appellant argues that both he and Ms. Alley testified concerning their belief that Mr. Hatcher was looking for his car radio at the time he entered the garage. In essence, the appellant asks this court to conclude that, as a matter of law, this testimony was credible and therefore outweighed the State's strong circumstantial evidence to the contrary. We decline this invitation. The weighing of the testimony of the appellant and his girlfriend, on the one hand, and the State's strong circumstantial evidence against the appellant, on the other, was a question of credibility for the jury, not the trial court, to resolve. State v. Bellamy, No. 03C01-9612-CR-00476, 1998 WL 88426, at *3 (Tenn.Crim.App. at Knoxville, March 3, 1998). This issue is without merit.

**B.      Sufficiency of the Evidence**

11

The appellant additionally challenges the sufficiency of all the evidence adduced at trial to support his conviction of aggravated burglary. We have already noted that, with respect to the State's proof, the appellant's guilt depended upon the jury's assessment of his credibility and the credibility of Ms. Alley. Moreover, the appellant concedes that Mr. Hatcher's testimony only presented another issue of credibility for the jury to resolve.

In reviewing a challenge to the sufficiency of the evidence, as in resolving issues predicated upon the grant or denial of a motion for judgment of acquittal, this court will not re-weigh the evidence adduced at trial. Questions concerning the credibility of witnesses and the weight and value to be given the evidence, as well as all factual issues raised by the evidence, are resolved by the trier of fact, and not the appellate courts. State v. Pruett, 788 S.W.2d 559, 561 (Tenn. 1990). On appeal, the burden is upon the appellant to establish that no "reasonable trier of fact" could have found the essential elements of the charged offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789 (1979); State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982); Tenn. R. App. P. 13(e). We conclude that the appellant has failed to carry this burden.

Nevertheless, the appellant argues that the jury's conviction of both the appellant and Mr. Hatcher conclusively demonstrates that the jury's verdict in the appellant's case was a product of "speculation and conjecture." In other words, the appellant contends that the verdicts are inconsistent. We note in passing that verdicts need not be consistent between co-defendants as long as the evidence supports the verdicts. State v. Graham, No. 02C01-9507-CR-00189, 1999 WL 225853, at *4 (Tenn. Crim. App. at Jackson, April 20, 1999). In any case, we have previously concluded that the strong circumstantial evidence adduced by the State supported the jury's finding that both the appellant and Mr. Hatcher are criminally responsible for the burglary of the Crawford residence. This issue is likewise without merit.

12

## C. Sentencing

The trial court conducted a hearing on July 24, 1998, in order to determine the appellant's sentences for theft and aggravated burglary. At the sentencing hearing, the State relied upon the pre-sentence report. The report reflects the appellant's history of criminal convictions as an adult, including his conviction on July 18, 1996, of worthless checks and his conviction on September 16, 1997, of misdemeanor theft. According to the report, the appellant was placed on probation pursuant to his conviction of worthless checks. His probationary sentence was subsequently revoked.[4] Additionally, as a juvenile, the appellant was adjudicated on March 11, 1992, to have committed ten counts of burglary of a residence.[5]

The appellant testified on his own behalf at the sentencing hearing. He stated that he was twenty-three years old. He related that, while he was incarcerated at Woodland Hills Youth Development Center pursuant to his juvenile adjudications, he obtained his GED and also attended classes at the Nashville Technical Institute. At the time of the sentencing hearing, he was working for Haywood Pool Products, where he had been employed since June 1997. He also worked on weekends for Myers Realtors and had been employed by that agency since March 1997. He stated that he currently worked a total amount of sixty to seventy hours per week.

With respect to his previous work history, the appellant testified that he had worked for Exxon from August 1996 until March 1997. During the summer of 1996, he visited a family member in California and briefly worked for Subway and A & J Studios. Finally, from October 1994 until March 1996, he worked as a manager for Sub Depot.

---

[4]The appellant testified at the hearing that he failed to pay restitution in that case.

[5]The appellant also admitted abuse of marijuana as a juvenile. However, only those delinquent acts that would constitute a felony if committed by an adult may be considered to enhance a sentence. State v. Haywood, No. 02C01-9707-CR-00289, 1998 WL 855436, at *16 (Tenn. Crim. App. at Jackson, December 11, 1998).

With respect to the appellant's history of criminal convictions and behavior, the appellant indicated that his offenses as a juvenile stemmed from his drug and alcohol abuse. He asserted that he successfully underwent drug and alcohol treatment in 1991 or 1992. Yet, he conceded that he had engaged in criminal behavior since completing his treatment.

In addition to his convictions as an adult of worthless checks and misdemeanor theft, the appellant added that he had previously been charged as an adult with the theft of more than one thousand dollars ($1,000.00) from Sub Depot. The charges, however, were retired in return for the appellant's agreement to pay two thousand and two hundred dollars ($2,200.00) in restitution to his former employer. At the sentencing hearing in this case, the appellant indicated that he had in fact paid one thousand and six hundred dollars ($1,600.00) to Sub Depot, although he still owed six hundred dollars ($600.00). The appellant denied stealing any money from Sub Depot, asserting that the company only held him responsible for the theft of the money due to the appellant's position as a manager at the time of the theft. The appellant also supplemented the pre-sentence report with the information that in 1997 he attempted to steal a pair of shorts from a Castner Knott department store. Although the appellant confirmed his guilt of the offense, he noted that the resultant charge of theft was retired.

With respect to the instant offenses, the appellant acknowledged his responsibility by stating that he "was there" and there was "nothing [he] could do about it." The appellant also explained that, at the time of these offenses, he was "going through a tough time." He continued to deny any knowledge that Mr. Hatcher intended to steal Mr. Crawford's tools at the time of Mr. Hatcher's entry into the Crawford's garage. In any event, the appellant concluded that he and his girlfriend had agreed that he would no longer engage in criminal behavior, and he stated his willingness to abide by any conditions of probation or a community corrections sentence.

14

At the conclusion of the sentencing hearing, the trial court found the following enhancement factors pursuant to Tenn. Code. Ann. § 40-35-114 (1997): (1) the appellant's previous history of criminal convictions or behavior; (8) the appellant's previous history of unwillingness to comply with a sentence involving release in the community; and (20) the appellant was adjudicated to have committed delinquent acts as a juvenile that would constitute felonies if committed by an adult. The trial court concluded that these factors outweighed any mitigating factors supported by the record.

As a Range I offender, the appellant was subject to a sentence of not less than one nor more than two years incarceration in the Tennessee Department of Correction for the offense of theft of property worth more than five hundred dollars ($500.00). See Tenn. Code. Ann. § 39-14-105 (2) (1997) and Tenn. Code. Ann. § 40-35-112(a)(5) (1997). The trial court imposed a maximum sentence of two years incarceration. For the aggravated burglary conviction, the appellant was subject to a sentence of not less than three nor more than six years incarceration. See Tenn. Code. Ann. § 39-14-403(b) and Tenn. Code. Ann. § 40-35-112(a)(3). The trial court imposed a mid-range sentence of four years incarceration. Additionally, the trial court denied the appellant any form of sentencing alternative to incarceration, particularly noting the appellant's poor potential for rehabilitation.

On appeal, the appellant challenges both the length of his sentences and the trial court's denial of a sentencing alternative to incarceration. Appellate review of the length, range, or manner of service of a sentence is de novo. Tenn. Code. Ann. § 40-35-401(d) (1997). In conducting its de novo review, this court considers the following factors: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the pre-sentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on enhancement and mitigating factors; (6) any statement by the defendant on his own behalf; and (7) the potential for rehabilitation or treatment. Tenn. Code. Ann. § 40-

35-102, -103, -210 (1997).  See also State v. Ashby, 823 S.W.2d 166, 168 (Tenn. 1991).  The burden is upon the appellant to demonstrate the impropriety of his sentences.  Tenn. Code. Ann. § 40-35-401, Sentencing Commission Comments. Moreover, if the record reveals that the trial court adequately considered sentencing principles and all relevant facts and circumstances, this court will accord the trial court's determinations a presumption of correctness.  Id. at (d); Ashby, 823 S.W.2d at 169.

### i. Excessive Sentences

With respect to the length of his sentences, the appellant initially asserts that the trial court's sentencing determinations do not warrant a presumption of correctness because the trial court failed to make separate findings for each offense.  Moreover, the appellant asserts that, in the absence of such findings, a maximum sentence for the theft conviction and a mid-range sentence for the aggravated burglary conviction are inconsistent.  We must agree.

In State v. Mayo, No. 01C01-9308-CC-00287, 1994 WL 585420, at *5 (Tenn. Crim. App. at Nashville, October 20, 1994), the trial court similarly declined to make separate findings for each of the defendant's convictions.  It appeared from the record that the trial court had found one enhancement factor, which was equally applicable to all of the defendant's offenses.  Id.  The trial court found no mitigating factors.  Id.  Nevertheless, the trial court imposed both minimum and mid-range sentences.  Id.  This court remanded the case for re-sentencing, observing that, unless a trial court attaches a different weight to the enhancement factors applied to one offense in comparison to another offense, the same factors cannot support a minimum sentence for one offense and a mid-range sentence for another.  The same logic applies to mid-range and maximum sentences.  However, in contrast to this court's opinion in Mayo, we do not find it necessary to remand this case for re-sentencing.

The statutorily prescribed procedure for determining the length of a

felony sentence is set forth in Tenn. Code. Ann. § 40-35-210. The presumptive sentence for both class E and C felonies is the minimum sentence in the range. Id. at (c). However, if there are enhancement and mitigating factors, a court must start at the minimum sentence in the range, enhance the sentence as appropriate for the enhancement factors, and then reduce the sentence as appropriate for the mitigating factors. Id. at (e).

With respect to enhancement factors, we agree with the State that factors (1), (8), and (20) are equally applicable to both of the appellant's convictions. Tenn. Code. Ann. § 40-35-114. The appellant concedes, as he must, that the application of factor (8), concerning the appellant's history of unwillingness to comply with the conditions of a sentence involving release in the community, is appropriate. Moreover, we reject the appellant's argument that application of both enhancement factor (1) and enhancement factor (20) constitutes double enhancement. Rather, a court may only consider adult convictions and adult criminal behavior in enhancing a sentence pursuant to Tenn. Code. Ann. § 40-35-114(1). State v. Brown, No. 02C01-9710-CC-00419, 1998 WL 742350, at *2 (Tenn. Crim. App. at Jackson, October 26, 1998). In contrast, a sentencing court may only consider juvenile adjudications, that would have been felonies if committed by an adult, in enhancing a sentence pursuant to Tenn. Code. Ann. § 40-35-114(20). Id. Accordingly, the application of each factor in this case is supported by different evidence presented at the sentencing hearing. The record reflects adult convictions or criminal behavior including a 1996 worthless checks conviction, a 1997 misdemeanor theft conviction, and the appellant's attempt in 1997 to steal a pair of shorts from a Castner Knott department store. The appellant's juvenile record includes ten previous burglaries.

With respect to mitigating factors, we agree with the appellant and the State concedes that the appellant's conduct in committing both offenses neither caused nor threatened serious bodily injury to another within the meaning of Tenn.

17

Code. Ann. § 40-35-113(1) (1997).[6] State v. Cobb, No. 01C01-9802-CC-00054, 1998 WL 798962, at *4 (Tenn. Crim. App. at Nashville, November 13, 1998). Moreover, we agree with the appellant than Tenn. Code. Ann. § 40-35-113 (9) and (10) have some application to both offenses. The record does reflect that, following his arrest, the appellant assisted Detective Parker in locating some of the stolen tools. Indeed, the appellant provided Detective Parker with directions to Easy Pawn & Loan. This information, in turn, enabled Detective Parker to locate Mr. Hatcher, the appellant's co-defendant. That having been said, we also agree with the State that the appellant's assistance was motivated largely by his desire to exculpate himself.

Our de novo review of the record has uncovered no other enhancement or mitigating factors of significant weight. As to the aforementioned factors, we conclude that the enhancement factors outweigh the mitigating factors and justify mid-range sentences for both of the appellant's offenses. Accordingly, we affirm the appellant's sentence for aggravated burglary and modify the appellant's sentence for theft to one year and four months.

### ii. Sentencing Alternative to Incarceration

The appellant next argues that the trial court should have granted him a sentencing alternative to incarceration. We initially note that the trial court failed to state on the record whether it applied the presumption in favor of alternative sentencing set forth in Tenn. Code. Ann. § 40-35-102 (6). Nevertheless, even assuming that the appellant is entitled to the presumption, we conclude that "evidence to the contrary" not only overcomes the presumption but militates in favor of the appellant's confinement.

The appellant received sentences of less than eight years for his convictions of aggravated burglary and theft and, accordingly, is eligible for probation. Tenn. Code. Ann. § 40-35-303(a) (1997). Moreover, the appellant meets

---

[6]Arguably, the trial court did afford some consideration to this factor, remarking that the factor helped the appellant more than it hurt him.

the eligibility criteria for alternative sentencing under the Community Corrections Act. Tenn. Code. Ann. § 40-36-106(a) (1997). Nevertheless, the appellant's sentences of confinement are appropriate due to his lengthy history of criminal conduct, his failure to respond to measures less restrictive than confinement, and his lack of amenability to rehabilitation. Tenn. Code. Ann. § 40-35-103(1)(A) and (C), (5).

We accord particular weight to the appellant's poor potential for rehabilitation. The appellant's credibility and willingness to accept responsibility for his crimes are circumstances germane to his rehabilitation potential. State v. Zeolia, 928 S.W.2d 457, 463 (Tenn. Crim. App. 1996). In this case, the appellant's credibility at the sentencing hearing was undermined by his lapses in honesty. For example, with respect to the appellant's theft of a pair of shorts from Castner Knott, the appellant at the sentencing hearing initially denied stealing the shorts, only admitting his guilt after further questioning by the prosecutor. We also note that, in his statement to the probation officer who prepared the pre-sentence report, the appellant denied that he accompanied Mr. Hatcher into Easy Pawn & Loan. This statement was flatly contradicted at trial by Mr. O'Kieff, who testified that both the appellant and Mr. Hatcher entered his pawnshop on April 10, 1997, and that he had recognized the appellant as a former customer. The appellant's lack of candor on this point reflects the inadequacy of his purported acceptance of responsibility for the instant offenses. Indeed, when asked at the sentencing hearing why he committed the offenses, the appellant informed the trial court that he "was there" and there was "nothing [he] could do about it." The appellant also cited "hard times" as an excuse for his conduct.[7]

Finally, the appellant argues that the trial court's denial of an alternative sentence is inconsistent with the trial court's suspension of Mr. Hatcher's sentence. We simply conclude that the record justifies the disparity in sentencing. See, e.g., State v. Williams, No. 02C01-9711-CR-00439, 1998 WL 902586, at *6

---

[7]At the sentencing hearing, the appellant argued that his successful completion of his drug and alcohol treatment and his steady employment demonstrate his amenability to rehabilitation. However, as noted by the trial court, neither accomplishment has deterred the appellant from engaging in criminal behavior.

(Tenn. Crim. App. at Jackson, December 29, 1998).[8]

### III. Conclusion

For the foregoing reasons, we affirm the judgment of the trial court in the aggravated burglary case and affirm in part and modify the judgment in the theft case to reflect a sentence of one year and four months.

_____
Norma McGee Ogle, Judge

CONCUR:

_____
David G. Hayes, Judge

_____
Jerry L. Smith, Judge

---

[8]The State asserts in its brief that the record is devoid of sentencing information relating to Mr. Hatcher. The State is incorrect. Mr. Hatcher's sentencing hearing is included in the record in its entirety.