STATE of Tennessee, Appellee,

v.

**Tony Ray CHRISMAN, Appellant.**

Court of Criminal Appeals of Tennessee, at Nashville.

June 9, 1994.

Permission to Appeal Denied by Supreme Court Sept. 12, 1994.

Comer L. Donnell, District Public Defender, Karen G. Chaffin (on appeal), and Robert Nix, Asst. Public Defenders (at trial), Lebanon, for appellant.

Charles W. Burson, Atty. Gen. & Reporter, Eugene J. Honea, Asst. Atty. Gen., Nashville, Tom P. Thompson, Dist. Atty. Gen., and Doug Hall, Asst. Dist. Atty. Gen., Lebanon, for appellee.

## *OPINION*

PEAY, Judge.

The defendant was convicted by a jury of one count of aggravated burglary, two counts of assault, one count of vandalism, and one count of arson by setting fire to personal property. The defendant was sentenced to five (5) years for aggravated burglary, eleven

(11) months and twenty-nine (29) days for each of the assaults, three (3) years for vandalism, and two (2) years for arson by setting fire to personal property. The arson sentence of two (2) years was ordered to be served consecutively to the others resulting in an effective sentence of seven (7) years.

In this appeal as of right the defendant presents two issues for review. He first contends that the evidence is insufficient to find him guilty of aggravated burglary. Secondly, he argues that the trial court abused its discretion in sentencing him. We find the first issue to be without merit but, in regard to the second issue, we remand this case for resentencing in conformity with this opinion.

At trial, three (3) witnesses testified for the State. Vickie Harrison, ex-girlfriend of the defendant and one of the victims, testified that she had begun a live-in relationship with the defendant in 1989. The relationship had been stormy, and the defendant moved out on May 20, 1991. On the evening of the incident, Ms. Harrison worked the 4:00 p.m. to 12:00 p.m. shift at Remay, a local manufacturing company. She then picked up her sixteen(16)-year-old daughter at her mother's house, and they arrived at Ms. Harrison's home at approximately 1:30 or 2:00 a.m.

Because she had locked her house, Ms. Harrison used her key to unlock the front door. When she entered the home, the defendant came out of her bedroom with a pitchfork. She attempted to call the police, but realized that the phone had been disconnected. The defendant then told her, "I'm going to mess you up.... I'm going to cut all your hair off. I'm going to cut your face all up and I'm going to make it where nobody will ever look at you again." He then scrubbed crushed glass from perfume bottles into her face and stabbed her in the arm with a pair of scissors. He also hit her in the face with the top of the toilet tank.

During this altercation, Ms. Harrison's daughter, Heather, came into the bedroom and attempted to assist her mother by hitting the defendant in the head with a brass lamp. He then turned and struck Heather. More words were exchanged, and Ms. Harrison pitchforked the defendant's foot to the floor. Heather then sprayed the defendant with a fire extinguisher, and the defendant told Ms. Harrison that he was going to kill both her and her daughter.

Meanwhile, Heather left by the back door and went for help. The police were called, and the defendant was discovered hiding under a utility table. He was arrested, and the two (2) victims were taken to a local hospital, treated, and released.

Before leaving her home, Ms. Harrison assessed the property damage. The defendant had not only punctured her water bed and ruined the carpet, but he had also destroyed two (2) doors, two (2) color televisions, a VCR, and a bedroom dresser. He had poured paint thinner in the bedroom and had taken all of Ms. Harrison's clothes, some of her jewelry, her daughter's baby book, and family pictures out to the back yard and set them on fire.

Heather, Ms. Harrison's daughter, testified next. In summary, her testimony corroborated that of her mother's as to most details.

Officer Steve Lawrence then testified as to the condition of the defendant, the victims, and the home when he had arrived at the scene. He described Ms. Harrison as having looked "distraught and disheveled." He observed that when he found the defendant, the defendant had appeared to have been drinking. And he testified that "[s]ome damage had been done to the house" and that "[t]he house looked like a hurricane had [blown] through." He described it as "one of the worst scenes inside a house I [had] ever [seen]."

The defendant was the sole witness to testify for the defense. In vivid contrast to the victims' version of the facts, he testified that he and Ms. Harrison had lived together until June 19 or 20 and that on June 26, 1991, he had gone by Ms. Harrison's house to get some of his tools. He testified that Ms. Harrison had called him around 6:00 p.m. that evening and told him that if he "cared anything about [their] relationship and future, ..., dreams of being together[,] to be at the house when she got off work at midnight."

When he arrived at the house, he couldn't find the key so he broke out a window and cleaned up the glass. He watched TV while waiting for her and then got upset. He admitted taking her clothes outside and burning them.

He testified that when Ms. Harrison had arrived home, she had begun cursing and hitting him in the head and groin with her fist. He wrestled with Ms. Harrison, and Heather hit him in the head with a lamp. He stated that he had then jumped up and knocked the lamp out of her hand, pushing her backward. Ms. Harrison then pricked him above the eye and in the chest with the pitchfork. The defendant testified that after she had stabbed him about six (6) times, he had "smacked her hard."

The defendant then went to the bathroom to try and calm Heather when Ms. Harrison came in and grabbed the toilet seat, cracking the defendant in the head with it. The defendant smacked her, and Heather then got the fire extinguisher and sprayed him in the face.

Again according to the defendant, Ms. Harrison cursed her daughter because she had hurt the defendant, and she then helped him wash the white powder from his face. The daughter informed them that she had called the police, and Ms. Harrison told the defendant to hide under a table in the utility room.

▮ In his first issue the defendant argues that the evidence is insufficient to support the jury's finding that he is guilty of aggravated burglary. Specifically he contends that the State failed to prove the following essential elements of the offense:

(1) That the defendant entered the habitation without the effective consent of the property owner,

(2) That the defendant entered the habitation with the intent to commit a felony or theft, and

(3) That the defendant remained concealed with the intent to commit a felony or theft.

In addressing this issue, we must begin by agreeing with the State that the defendant has misconstrued T.C.A. § 39–14–402 as to the elements of the offense of aggravated burglary.

In order to sustain a conviction for burglary, T.C.A. § 39–14–402 requires the following:

(a) A person commits burglary who, without the effective consent of the property owner:

(1) Enters a building other than a habitation (or any portion thereof) not open to the public, with intent to commit a felony or theft;

(2) Remains concealed, with the intent to commit a felony or theft, in a building;

(3) Enters a building and commits or attempts to commit a felony or theft; or

(4) Enters any freight or passenger car, automobile, truck, trailer or other motor vehicle with intent to commit a felony or theft (emphasis added).

Aggravated burglary is burglary of a habitation. T.C.A. § 39–14–403. Therefore, in order to prove the elements of aggravated burglary, the State need only prove that the defendant entered the victim's house, without consent, with the intent to commit a felony or theft.

▮ When an accused challenges the sufficiency of the convicting evidence, we must review the evidence in the light most favorable to the prosecution in determining whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). We do not reweigh or re-evaluate the evidence and are required to afford the State the strongest legitimate view of the proof contained in the record as well as all reasonable and legitimate inferences which may be drawn therefrom. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn.1978).

▮ Questions concerning the credibility of witnesses, the weight and value to be given to the evidence, as well as factual issues raised by the evidence are resolved by the trier of fact, not this Court. *Cabbage*, 571 S.W.2d 832, 835. A guilty verdict rendered by the jury and approved by the trial judge accredits the testimony of the wit-

nesses for the State, and a presumption of guilt replaces the presumption of innocence. *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973).

■■ A defendant challenging the sufficiency of the proof has the burden of illustrating to this Court why the evidence is insufficient to support the verdict returned by the trier of fact in his or her case. This Court will not disturb a verdict of guilt for lack of sufficient evidence unless the facts contained in the record and any inferences which may be drawn from the facts are insufficient, as a matter of law, for a rational trier of fact to find the defendant guilty beyond a reasonable doubt. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn.1982).

This Court, in reviewing the evidence in the light most favorable to the State, must conclude that a rational trier of fact could have found the essential elements of aggravated burglary beyond a reasonable doubt. As noted previously, the weight and credibility of the witnesses' testimony are matters entrusted exclusively to the jury as triers of fact. *Cabbage*, 571 S.W.2d at 835. The jury obviously credited the testimony of the victims.

Ms. Harrison testified that she had neither invited nor given the defendant permission to enter her home. Although the defendant contends that the record is "devoid of any evidence, either direct or circumstantial that the defendant entered the residence with the intent to commit a felony or theft," this Court has often found that specific intent may be established by circumstantial evidence. *State v. Burkley*, 804 S.W.2d 458, 460 (Tenn.Crim.App.1990). In *Burkley*, this Court held that "[w]hen one enters, without authorization, an occupied dwelling which contains valuable property, a jury is entitled to infer that the entry was made with the intent to commit a felony." *Burkley*, 804 S.W.2d at 460 (citing *Hall v. State*, 490 S.W.2d 495, 496 (Tenn.1973)).

The defendant in this present case does not contest his two (2) felony convictions for arson and vandalism. We therefore conclude that the jury could have easily found, based on the evidence, that the defendant entered Ms. Harrison's house with the intent to commit these felonies. This issue is without merit.

■. In his second issue the defendant contends that the trial court abused its discretion by setting excessive sentences, by ordering a consecutive sentence for the arson offense, and by denying probation. After reviewing the record in this cause, we remand this matter for resentencing.

■ When a defendant complains of his or her sentence, we must conduct a *de novo* review with a presumption of correctness. T.C.A. § 40–35–401(d). The burden of showing that the sentence is improper is upon the appealing party. T.C.A. § 40–35–401(d) Sentencing Commission Comments. This presumption, however, is conditioned upon an affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances. *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991).

A portion of the Sentencing Reform Act of 1989, codified at T.C.A. § 40–35–210, established a number of specific procedures to be followed in sentencing. This section mandates the court's consideration of the following:

(1) The evidence, if any, received at the trial and the sentencing hearing; (2) [t]he presentence report; (3) [t]he principles of sentencing and arguments as to sentencing alternatives; (4) [t]he nature and characteristics of the criminal conduct involved; (5) [e]vidence and information offered by the parties on the enhancement and mitigating factors in §§ 40–35–113 and 40–35–114; and (6) [a]ny statement the defendant wishes to make in his own behalf about sentencing.

T.C.A. § 40–35–210.

In addition, this section provides that the minimum sentence within the range is the presumptive sentence. If there are enhancing and mitigating factors, the court must start at the minimum sentence in the range and enhance the sentence as appropriate for the enhancement factors and then reduce the sentence within the range as appropriate for the mitigating factors. If there are no miti-

gating factors, the court may set the sentence above the minimum in that range but still within the range.

■ The Act further provides that "[w]henever the court imposes a sentence, it *shall place on the record* either orally or in writing, what enhancement or mitigating factors it found, if any, as well as findings of fact as required by § 40–35–209." T.C.A. § 40–35–210(f) (emphasis added). Because of the importance of enhancing and mitigating factors under the sentencing guidelines, even the absence of these factors must be recorded if none are found. T.C.A. § 40–35–210 comment. These findings by the trial judge must be recorded in order to allow an adequate review on appeal.

In the case at bar the trial judge noted in his application of enhancement factors that the defendant had a previous history of criminal convictions, that the personal injury and property damage was great, that during the commission of the felony the defendant willfully inflicted bodily injury upon another person, and that the crime was committed under circumstances under which the potential for bodily injury to a victim was great. T.C.A. § 40–35–114(1), (6), (12), (16). However, the trial judge did not make separate findings as to which enhancement factors applied to which convictions. Each of the defendant's sentences was enhanced within the appropriate range, but without the classification of applicable factors to certain crimes, this Court is unable to conduct an adequate review. We therefore remand this case for resentencing in compliance with the aforementioned guidelines.

■ The defendant also contends that the trial court abused its discretion in ordering the two (2) year sentence for arson to be served consecutively. On this issue, we respectfully disagree.

Again, the trial court was not specific in its sentencing actions, but it noted the defendant's extensive prior criminal record. T.C.A. § 40–35–115(b)(2) provides for consecutive sentencing where the "defendant is an offender whose record of criminal activity is extensive." We believe the record supports a finding that the defendant has a record of

extensive criminal activity. According to the proof presented at the sentencing hearing, the defendant has a criminal history dating back to 1977. He has two (2) prior drug convictions, two (2) weapons offense convictions, and numerous misdemeanor driving offenses. Charges of aggravated criminal trespass and driving on a revoked license were pending against the defendant at the time of the trial. This proof is sufficient to support a finding that the defendant's criminal activity has been extensive.

■ Lastly the defendant contends that in not suspending the defendant's sentence and granting him probation, "the trial judge was capricious, arbitrary, and palpably abusive of his discretion." Again we do not agree.

T.C.A. § 40–35–103 sets out sentencing considerations which are guidelines for determining whether or not a defendant should be incarcerated. These include the need "to protect society by restraining a defendant having a long history of criminal conduct," the need "to avoid depreciating the seriousness of the offense," the determination that "confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses," or the determination that "measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant." T.C.A. § 40–35–103(1). In determining the specific sentence and the possible combination of sentencing alternatives, the court shall consider the following: (1) any evidence from the trial and sentencing hearing, (2) the presentence report, (3) the principles of sentencing and the arguments concerning sentencing alternatives, (4) the nature and characteristics of the offense, (5) information offered by the State or the defendant concerning enhancing and mitigating factors as found in T.C.A. §§ 40–35–113 and –114, and (6) the defendant's statements in his or her own behalf concerning sentencing. T.C.A. § 40–35–210(b). In addition, the legislature established certain sentencing principles which include the following:

(5) In recognition that state prison capacities and the funds to build and maintain them are limited, convicted felons commit-

ting the most severe offenses, possessing criminal histories evincing a clear disregard for the laws and morale of society, and evincing failure of past efforts at rehabilitation shall be given first priority regarding sentencing involving incarceration, and

(6) A defendant who does not fall within the parameters of subdivision (5) and is an especially mitigated or standard offender convicted of a Class C, D or E felony is presumed to be a favorable candidate for alternative sentencing options in the absence of evidence to the contrary.

T.C.A. § 40–35–102.

After reviewing the statutes set out above, it is obvious that the intent of the legislature is to encourage alternatives to incarceration in cases where defendants are sentenced as standard or mitigated offenders convicted of C, D, or E felonies. However, it is also clear that there is an intent to incarcerate those defendants whose criminal histories indicate a clear disregard for the laws and morals of society and a failure of past efforts to rehabilitate.

In the case at bar, the trial court found that the defendant had been untruthful, that he had exhibited no remorse, that he "hadn't held a job very well for a long time," that he had had problems with alcohol and drugs, and that he had had an accumulation of "smaller" violations in addition to his other criminal activity.

T.C.A. § 40–35–103(5) states that the "potential or lack of potential for the rehabilitation or treatment of the defendant should be considered in determining the sentence alter-

native or length of a term to be imposed." And, in *State v. Bunch*, 646 S.W.2d 158, 160 (Tenn.1983), our Supreme Court held that truthfulness is certainly a factor which the court may consider in deciding whether to grant or deny probation. *See also State v. Dykes*, 803 S.W.2d 250, 259–60 (Tenn.Crim. App.1990).

As mentioned previously, the record before us indicates that the defendant has a lengthy history of criminal conduct. The presentence report indicates that his work history has been sporadic and at the time of the sentencing hearing, he was unemployed. He also has a history of drug and alcohol abuse, and we note that at the time of the offense, the investigating officer testified that the defendant had been drinking. We find that because the defendant's history indicates a clear disregard for the law and morals of society and a failure of past efforts to rehabilitate, the trial judge did not abuse his discretion in denying probation.

Having considered all issues raised on appeal, we affirm the defendant's convictions but remand this cause for resentencing in conformity with this opinion.

TIPTON, J., and C. CREED McGINLEY, Special Judge, concur.