IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT KNOXVILLE

FEBRUARY SESSION, 1999

FILED

May 21, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | ) | C.C.A. NO. 03C01-9804-CR-00152 |
| | ) | |
| Appellee, | ) | |
| | ) | SULLIVAN COUNTY |
| V. | ) | |
| | ) | |
| | ) | HON. R. JERRY BECK, JUDGE |
| FRANKIE LEE LUNSFORD, | ) | |
| | ) | |
| Appellant. | ) | (CHILD ABUSE) |

FOR THE APPELLANT:                    FOR THE APPELLEE:

TERRY C. FRYE,                        JOHN KNOX WALKUP
1969 Lee Highway                     Attorney General & Reporter
Bristol, Virginia  24201

                                     ELIZABETH B. MARNEY
                                     Assistant Attorney General
                                     2nd Floor, Cordell Hull Building
                                     425 Fifth Avenue North
                                     Nashville, TN  37243

                                     H. GREELEY WELLS, JR.
                                     District Attorney General

                                     TERESA MURRAY-SMITH
                                     Assistant District Attorney General
                                     P.O. Box 526
                                     Blountville, TN  37617

OPINION FILED _____

AFFIRMED

THOMAS T. WOODALL, JUDGE

# OPINION

The Defendant, Frankie Lee Lunsford, appeals as of right from his sentencing in the Sullivan County Criminal Court. Defendant was charged with one (1) count of Class D felony child abuse and pled guilty on February 23, 1998. As agreed to by the State and the Defendant as part of the plea agreement, the trial court was to determine the manner of service of a three (3) year sentence for the Defendant as a Range I Standard Offender. The State agreed not to oppose Defendant's request for alternative sentencing. The trial court denied any form of alternative sentencing, and sentenced the Defendant to serve three (3) years in the Tennessee Department of Correction. We affirm the judgment of the trial court.

When an accused challenges the length, range or the manner of service of a sentence, this court has a duty to conduct a <u>de novo</u> review of the sentence with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." <u>State v. Ashby</u>, 823 S.W.2d 166, 169 (Tenn. 1991).

In conducting a <u>de novo</u> review of a sentence, this court must consider: (a) the evidence, if any, received at the trial and the sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) any statutory mitigating or enhancement factors; (f) any statement that the defendant made on his own behalf; and (g) the potential or lack of potential for rehabilitation or treatment.

Tenn. Code Ann. § 40-35-102, -103, and -210; see State v. Smith, 735 S.W.2d 859, 863 (Tenn. Crim. App. 1987).

If our review reflects that the trial court followed the statutory sentencing procedure, imposed a lawful sentence after having given due consideration and proper weight to the factors and principles set out under the sentencing law, and made findings of fact adequately supported by the record, then we may not modify the sentence even if we would have preferred a different result. State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

A defendant who "is an especially mitigated or standard offender convicted of a Class C, D or E felony is presumed to be a favorable candidate for alternative sentencing options in the absence of evidence to the contrary." Tenn. Code Ann. § 40-35-102(6). Our sentencing law also provides that "convicted felons committing the most severe offenses, possessing criminal histories evincing a clear disregard for the laws and morals of society, and evincing failure of past efforts at rehabilitation, shall be given first priority regarding sentences involving incarceration." Tenn. Code Ann. § 40-35-102(5). Thus, a defendant sentenced to eight (8) years or less who is not an offender for whom incarceration is a priority is presumed eligible for alternative sentencing unless sufficient evidence rebuts the presumption. However, the act does not provide that all offenders who meet the criteria are entitled to such relief; rather, it requires that sentencing issues be determined by the facts and circumstances presented in each case. See State v. Taylor, 744 S.W.2d 919, 922 (Tenn. Crim. App. 1987).

Additionally, the principles of sentencing reflect that the sentence should be no greater than that deserved for the offense committed and should be the least severe measure necessary to achieve the purposes for which the sentence is imposed. Tenn. Code Ann. § 40-35-103(3) - (4). The court should also consider the potential for rehabilitation or treatment of the defendant in determining the sentence alternative. Tenn. Code Ann. § 40-35-103(5).

At the sentencing hearing, the Defendant testified in his own behalf. He is married to Tammy Michelle Lunsford and the victim, Isaiah Alexander Lunsford ("Alex"), is their son. The Defendant admitted that in February 1997 he was an alcoholic and was having trouble controlling his anger. He was taking care of his son on February 12, 1997, while his wife was at work, and Alex had been crying. Defendant explained that "due to poor judgment," he tossed Alex onto the bed. Alex apparently fell, hit his head on the footboard beside the bed and then flipped onto the floor. Defendant picked him up and laid him back onto the bed. Defendant's wife called at that time and when Defendant returned to the room where Alex lay on the bed, his son was unconscious and his wife advised him to call 911. Defendant explained that he was not attempting to throw Alex at the bedpost or onto the floor, or trying to injure him in any manner.

Defendant explained that he loved his son and had regularly cared for him until that time while his wife worked. Alex had never previously been injured nor had there been any reports of child abuse filed against Defendant to his knowledge. When the rescue squad arrived at his home, Defendant stated he was in tears and was very scared. Alex was in the hospital for a total of nine (9) days following this incident, partially due to the fact that a foster home had to be found for Alex. While

Defendant has not had custody of Alex since the criminal incident, he had visited with him on a regular basis. Also, Defendant had undergone alcohol treatment and counseling, including AA and classes in abuse alternatives, anger management and parenting. Defendant stated that he has not had any alcohol to drink since enrolling in his alcohol treatment class.

Defendant described that he had been regularly employed since this incident at Taco Bell, and was employed prior to this incident. Defendant admitted to earlier incidents of abuse during which he struck his wife. He also admitted to two (2) other offenses, including disorderly conduct and resisting a stop, frisk or halt. Defendant explained that he had been drinking and could not control his own actions, although he denied any physical altercations with the police.

Tammy Lunsford, the Defendant's wife, testified that on February 12, 1997, she was working at the time Alex was injured. She called home on her break, and Defendant advised her that Alex had fallen off the bed. Tammy Lunsford advised the Defendant, who was upset, to call 911 while she found a way home from work. When she arrived home, they were putting Alex into the ambulance. Mrs. Lunsford described that Defendant had been actively involved in the caretaking of his child since his birth as she returned to work only two (2) weeks after Alex was born. They agreed that one (1) of them would stay home with Alex to care for him. She had never personally witnessed any incidents of abuse or observed anything to indicate that Alex had been abused in any way by the Defendant. Tammy Lunsford described Defendant's alcohol abuse, including daily drinking and the resulting problems with his anger. She described that they would be "at each other's throat," and that Defendant had smacked her as a result on past occasions. However, she

-5-

did not believe that Defendant was actually attempting to physically harm her and was never injured by the abuse. Since Defendant had stopped drinking alcohol and had taken the anger management classes, he controlled his anger when they fought by going to a different room and calming down.

On cross-examination, Tammy Lunsford admitted that she chose to stay with the Defendant rather than to regain custody of her son Alex. She admitted that Defendant was untruthful with her on the day Alex was injured about how the incident occurred.

In sentencing the Defendant, the trial court stated that Defendant was presumed to be a favorable candidate for alternative sentencing. The trial court stated the facts of the case as follows:

> The alleged victim in the case was a six (6) month old baby. Initially, the baby received a -- it was determined by medical experts the baby had received a fractured skull and subdural hematoma. The report indicates this was a very serious injury. This type of injury, particularly to a child, is known to the court that a child's skull of that age would be more flexible and it would -- than say that of an adult. The Defendant, evidently, threw the child into a bed. The child allegedly hit a post and fell to the floor. The Defendant, after being -- first interviewed by the police, just indicated the child had fallen from the bed and that he came in and found the baby laying on the floor on its back. And Mr. Lunsford advised authorities that he assumed the baby had fallen off the bed.

Initially the trial court observed that this was a crime of violence and the Defendant was ineligible for Community Corrections due to the nature of the crime involved. The trial court then observed that the Defendant was not truthful in making his first statement to the police. Eventually, the Defendant did admit that "he lost it and he pitched the baby, and the baby struck its head on a square bedpost footboard, which had jagged edges on it. The baby then flipped onto the floor, and the baby eventually wound up on its stomach." Defendant also admitted other acts

of violence in the presentence report, including striking his wife while she was pregnant resulting in two (2) black eyes and a busted nose as noted by the trial court. The detective who investigated the case indicated in the presentence report that there were various domestic violence calls in September, October and November 1996.

As the child was particularly vulnerable because of his age and having no way to protect or defend himself from his own father, the trial court found that a private trust was violated. The trial court noted that according to Defendant's prior criminal record of misdemeanors, Defendant had been placed on some type of alternative sentencing for each of these prior offenses. The presentence report further indicated that the Defendant had not completed his high school education due to his involvement in fights and had used alcohol since the age of thirteen (13) and marijuana since the age of fifteen (15) or sixteen (16). At the time of preparation of the presentence report, the trial court noted that Defendant admitted his last usage of marijuana was approximately one (1) month prior to the report.

Factors favoring an alternative sentence included that Defendant was seeking to "change his ways . . . loves the child and . . . shows remorse at the injury." The Defendant does have a history of employment. While there were some favorable factors, the trial court found that the unfavorable factors outweighed the favorable ones and that alternative sentencing should be denied.

When imposing a sentence of total confinement, our Criminal Sentencing Reform Act mandates the trial court to base its decision on the considerations set forth in Tennessee Code Annotated section 40-35-103. These considerations which

militate against alternative sentencing include: the need to protect society by restraining a defendant having a long history of criminal conduct, whether confinement is particularly appropriate to effectively deter others likely to commit a similar offense, the need to avoid depreciating the seriousness of the offense, and the need to order confinement in cases in which less restrictive measures have often or recently been unsuccessfully applied to the defendant. Tenn. Code Ann. § 40-35-103(1). In the case sub judice, the trial court apparently relied upon the Defendant's previous criminal history, including prior abusive assaults upon his wife while she was pregnant, to justify a sentence of total confinement. In addition, the trial court correctly noted that the Defendant had received alternative sentences for prior convictions and had continued to fail to conform his conduct to the law. Where a defendant's history indicates a clear disregard for the law and morals of society and a failure of past efforts to rehabilitate, the trial court did not abuse his discretion in denying probation. State v. Chrisman, 885 S.W.2d 834, 840 (Tenn. Crim. App. 1994).

In determining whether to grant probation, the judge must consider the nature and circumstances of the offense, the defendant's criminal record, his background and social history, his present condition, including his physical and mental condition, the deterrent effect on other criminal activity, and the likelihood that probation is in the best interests of both the public and the defendant. Stiller v. State, 516 S.W.2d 617, 620 (Tenn. 1974). The burden is on the defendant to show that the sentence he received is improper and that he is entitled to probation. Ashby, 823 S.W.2d at 169. Defendant has failed to convince us that the trial court erred. Particularly relevant is Defendant's lack of truthfulness regarding this offense. While Defendant did initially lie to his wife and to the police as to how Alex was injured, he did correct

his version of the events at a later date.  However, in his statement submitted on May 5, 1997 for the presentence report, Defendant stated that he "accidentally bumped" his son's head on the bedpost.  This is contrary to an earlier version of the facts in which Defendant admitted to pitching the baby and it striking its head on the bedpost footboard.  As aptly noted by the trial court, truthfulness by a defendant is a factor that may be considered in determining the appropriateness of probation. State v. Dykes, 803 S.W.2d 250, 259 (Tenn. Crim. App. 1990).  This issue is without merit.

Finally, it appears from Defendant's brief that he asserts various enhancement and mitigating factors were not appropriately applied by the trial court.  However, as stated within the sentencing hearing, the Defendant pled guilty pursuant to a negotiated plea agreement to a sentence of three (3) years as a Range I Offender. While Defendant may contest the manner of service of his sentence, there is no indication that he did not voluntarily agree to the length of the sentence.  The sentencing hearing was held for the sole purpose of allowing the trial court to determine whether Defendant was eligible for alternative sentencing.  Any arguments as to the length of Defendant's sentence are moot.

After a thorough review of the brief, the record and the law, we affirm the judgment of the trial court.

_____
THOMAS T. WOODALL, Judge

CONCUR:

-10-

_____
JERRY L. SMITH, Judge

_____
L. T. LAFFERTY, Senior Judge