IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs February 24, 2004

## STATE OF TENNESSEE v. MARION SHAWN LAUGHRUN[1]

**Direct Appeal from the Criminal Court for Washington County**
**Nos. 26927, 26943, 27559    Robert E. Cupp, Judge**

_____

**No. E2003-00346-CCA-R3-CD**
**April 16, 2004**
_____

The appellant, Marion Shawn Laughrun, pled guilty to two counts of theft in the Washington County Criminal Court and received a total effective sentence of two years and one day in the Tennessee Department of Correction. The trial court granted the appellant probation on both of his sentences. While on probation, the appellant pled guilty to attempted robbery and received a sentence of four years incarceration in the Tennessee Department of Correction. As a result of the new conviction, the trial court revoked the appellant's probation on the theft convictions and ordered the original sentences to be served in confinement. Additionally, the court refused to grant the appellant an alternative sentence on the attempted robbery conviction. The appellant appeals both the probation revocation and the denial of alternative sentencing. Upon review of the record and parties' briefs, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court are Affirmed.**

NORMA McGEE OGLE, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and ALAN E. GLENN, J., joined.

Deborah Black Huskins, Johnson City, Tennessee, for the appellant, Marion Shawn Laughrun.

Paul G. Summers, Attorney General and Reporter; Jennifer L. Bledsoe, Assistant Attorney General; Joe Crumley, District Attorney General; and Dennis Brooks, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**I.  Factual Background**

_____

[1] The indictment in case number 26943 (theft over $500) reflects that the appellant's name is "Marion Shawn Laughrun." The indictment in case number 27559 (attempted robbery) reflects the name "Marion S. Laughrun," while case number 26927 (theft over $1000) reflects the name "Shawn M. Laughrun."

On September 5, 2001, the appellant was indicted by the Washington County Grand Jury on one count of theft of property valued over $500 from Johnson City Internal Medicine and one count of theft of property valued over $1000 from his aunt, Dorthy J. Sult. On November 9, 2001, the appellant entered guilty pleas to both of the foregoing charges. The appellant received concurrent sentences of one year for the conviction for theft over $500 and two years and one day for the conviction for theft over $1000. The trial court suspended both of the appellant's sentences.

On March 12, 2002, a probation violation warrant was issued against the appellant, alleging that he failed to comply with several rules governing his probation. Notably, the warrant stated that the appellant failed to obey the laws, citing as proof his arrest on March 9, 2002, for aggravated robbery and his charges of writing six bad checks to Ingles grocery store while on probation.

Subsequently, on September 16, 2002, the appellant pled guilty to attempted robbery for the March 2002 offense and received an agreed upon sentence of four years, which sentence was to be served consecutively to the sentences for the theft convictions. At the plea hearing, the trial court placed the appellant on "bond monitoring" until December 2, 2002, at which time the court would determine whether to grant the appellant probation. Thereafter, on October 15, 2002, a violation warrant was issued, claiming that the appellant violated his "bond monitoring contract" by absconding, failing to maintain employment, missing an office visit, missing an "MRT class," failing to perform community service, and missing curfew.

On January 27, 2003, a hearing was held regarding the revocation of the appellant's probation on the theft convictions and the appellant's request for probation on the attempted robbery conviction. The appellant testified at the hearing that he had been on probation for the two theft convictions when he engaged in the act of attempted robbery. His motivation for the attempted robbery was to gain money to support his cocaine addiction. He stated that while he was in jail following the attempted robbery, he wrote a "relapse prevention plan" which included "continuing care with Watauga outpatient therapy" where he had completed a six-month program.

The appellant admitted that while he was on probation for the theft convictions he failed to attend probation meetings, pay probation fees, or begin community service. However, the appellant maintained that he had been paying his court costs and fees. The trial court noted that the appellant had paid a total of $727 on one case.

The appellant testified that he was successful on bond monitoring for approximately three weeks, then he began experiencing family problems. The appellant explained that he had "[o]ngoing issues that I had not been back to see my personal psychiatrist for follow-up after I got out of jail. So I became overwhelmed and fearful, and I believe that's what prompted me to miss my appointment. I just became scared and – fearful and anxiety – anxious."

Also while on bond monitoring, the appellant received a conviction for leaving the scene of an accident. The appellant maintained that a truck ran a stop sign and collided with his vehicle. Even though the accident was not his fault, the appellant "panicked" and "bec[a]me overwhelmed

and fearful knowing that it wasn't my fault. . . . I just left." The appellant also admitted that he wrote bad checks in January 2002 while he was on probation for the theft convictions. The appellant conceded that he never informed his probation officer of his new arrests or convictions. He attributed his fear and anxiety to his recently diagnosed anxiety and chronic depression. He stated that after his diagnosis, he was prescribed Zoloft and "noticed remarkable change."

At the conclusion of the hearing, the trial court revoked the appellant's probation on the theft convictions. The trial court stated:

> First of all, as to the violation of probation in the theft charge[s], . . . the court finds that he violated the conditions of it by catching the new charge, that is attempted robbery. And not only that he . . . violated the terms of it because he was under an obligation from his probation to report that offense, those check charges, to the probation. He didn't do that. Because of that he did violate the terms of probation [on] . . . the theft charges. Those charges are ordered served.

Turning to the appellant's request for probation on the attempted robbery conviction, the trial court listed the appellant's extensive criminal history. The trial court noted that, irrespective of the appellant's status as a Range II offender, "he's entitled to a presumption and he's a favorable candidate for probation." However, the trial court determined that the appellant demonstrated "a clear disregard for the laws and morals of society" and "evinc[ed] failure of past efforts at rehabilitiation." Notably, the trial court explained:

> I mean, we tried to rehabilitate him on the theft charge[s] and it didn't work. I let him back out foolishly after he had the theft[s] and the attempted robbery on an attempt to continue to rehabilitate him, and that went kerplunk down the drain. So because of that, he is one of those individuals that you give first priority on determining whether or not you should possibly incarcerate him.
>
> . . . .
>
> . . . And I'm looking at probation factors. I've talked about his prior criminal history. I've talked about – and we all talked about his previous actions and character. His character is just – it's not there. He has none. . . . [The appellant has] done nothing except go back to his old ways as soon as we let him back out. And one of the big factors of whether the [appellant] might reasonably be expected to be successful in rehabilitation, and that's just an absolute no, an unequivocal no. We've given him . . . every opportunity to show us he can be rehabilitated. . . . Because . . . the [appellant's] potential for

rehabilitation is just absolutely nonexistent in this case, the court orders the attempted robbery sentence also served.

On appeal, the appellant challenges the trial court's imposition of incarceration upon the revocation of probation relating to the theft convictions and the denial of alternative sentencing on the attempted robbery conviction.

## II. Analysis

Appellate review of the manner of service of a sentence is de novo. See Tenn. Code Ann. § 40-35-401(d) (1997 and 2003). In conducting its de novo review, this court considers the following factors: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on enhancement and mitigating factors; (6) any statement by the appellant in his own behalf; and (7) the potential for rehabilitation or treatment. See Tenn. Code Ann. §§ 40-35-102, -103, -210 (1997 and 2003); see also State v. Ashby, 823 S.W.2d 166, 168 (Tenn. 1991). The burden is on the appellant to demonstrate the impropriety of his sentences. See Tenn. Code Ann. § 40-35-401, Sentencing Commission Comments. Moreover, if the record reveals that the trial court adequately considered sentencing principles and all relevant facts and circumstances, this court will accord the trial court's determinations a presumption of correctness. Id. at (d); Ashby, 823 S.W.2d at 169. In the instant case, we conclude that the trial court's determinations are not entitled to a presumption of correctness.

### A. Probation Revocation

Upon finding by a preponderance of the evidence that the appellant has violated the terms of his probation, a trial court is authorized to order an appellant to serve the balance of his original sentence in confinement. See Tenn. Code Ann. §§ 40-35-310 and -311(d) (1997), -310 and -311(e) (2003); State v. Harkins, 811 S.W.2d 79, 82 (Tenn. 1991). Furthermore, probation revocation rests in the sound discretion of the trial court and will not be overturned by this court absent an abuse of that discretion. See State v. Leach, 914 S.W.2d 104, 106 (Tenn. Crim. App. 1995). An abuse of discretion exists when "the record contains no substantial evidence to support the trial court's conclusion that a violation has occurred." State v. Conner, 919 S.W.2d 48, 50 (Tenn. Crim. App. 1995).

In the instant case, the appellant concedes that there was ample proof to support the revocation of his probation. However, he contends that the trial court should have again granted him alternative sentencing upon the revocation of his probationary sentence. As we noted, the trial court was authorized to impose the original sentences upon revoking the appellant's probation. Moreover, "an accused, already on probation, is not entitled to a second grant of probation or another form of alternative sentencing." State v. Jeffrey A. Warfield, No. 01C01-9711-CC-00504, 1999 WL 61065, at *2 (Tenn. Crim. App. at Nashville, Feb. 10, 1999); see also State v. Timothy A. Johnson, No.

-4-

M2001-01362-CCA-R3-CD, 2002 WL 242351, at *2 (Tenn. Crim. App. at Nashville, Feb. 11, 2002). We conclude that the trial court did not abuse its discretion in revoking the appellant's probationary sentences or imposing the original sentences upon the revocation. This issue is without merit.

### B. Alternative Sentencing

The appellant also argues that the trial court erred in failing to grant an alternative sentence in connection with his attempted robbery conviction.[2] Initially, we recognize that an appellant is eligible for alternative sentencing if the sentence actually imposed is eight years or less. See Tenn. Code Ann. § 40-35-303(a) (1997). Moreover, an appellant who is an especially mitigated or standard offender convicted of a Class C, D, or E felony is presumed to be a favorable candidate for alternative sentencing. See Tenn. Code Ann. § 40-35-102(6). In the instant case, the appellant is a multiple Range II offender convicted of a Class D felony; therefore, he is not presumed to be a favorable candidate for alternative sentencing. Regardless, because the sentence imposed was less than eight years, the appellant was statutorily eligible for alternative sentencing.

Any presumption in favor of alternative sentencing may be rebutted by "evidence to the contrary." State v. Zeolia, 928 S.W.2d 457, 461 (Tenn. Crim. App. 1996). The following sentencing considerations, set forth in Tennessee Code Annotated section 40-35-103(1), may constitute "evidence to the contrary":

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
>
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
>
> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

Id.

The appellant's presentence report reflects that he has a long history of criminal conduct. The appellant has three prior misdemeanor convictions and two felony theft convictions for which he was on probation at the time of the commission of the instant offense. Moreover, the appellant admits to a lengthy history of substance abuse. We conclude that the trial court did not err in considering the appellant's criminal history as support for its denial of alternative sentencing. See

---

[2] Specifically, the appellant contends that he was a suitable candidate for community corrections. Community corrections is a form of alternative sentencing. See Tenn. Code Ann. §§ 40-35-104 (c)(9), 40-36-106 (1997 and 2003).

State v. Jesse Tuggle, No. M2002-02426-CCA-R3-CD, 2003 WL 23099750, at *8 (Tenn. Crim. App. at Nashville, Dec. 30, 2003), application for perm. to appeal filed, (Feb. 27, 2004).

Moreover, the record clearly reflects that measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the appellant. The appellant committed the instant offense while on probation for the aforementioned two felony theft convictions. The appellant also wrote at least six bad checks while on probation. Additionally, while on bond monitoring pending sentencing and his probation revocation hearing, the appellant committed the crime of leaving the scene of an accident. The appellant's continual reoffending justifies the trial court's finding that the appellant's potential for rehabilitation was "just absolutely nonexistent." See State v. Chrisman, 885 S.W.2d 834, 840 (Tenn. Crim. App. 1994). Accordingly, we conclude that the record amply supports the trial court's denial of alternative sentencing.

## III. Conclusion

Finding no reversible error, we affirm the judgments of the trial court.

_____
NORMA McGEE OGLE, JUDGE