# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### November 18, 2009 Session

## STATE OF TENNESSEE v. JOHNNY BERNOSA YOUNG

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2007-D-3549    Monte D. Watkins, Judge**

---

**No. M2008-02736-CCA-R3-CD - Filed February 26, 2010**

---

The Defendant-Appellant, Johnny Bernosa Young, was convicted by a Davidson County Criminal Court jury of aggravated burglary, a Class C felony, and theft of property valued at $1000 or more, a Class D felony. The sole issue presented for our review is whether the trial court erred in ordering Young to serve his felony sentences consecutively. Upon review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which JERRY L. SMITH and THOMAS T. WOODALL, JJ., joined.

Sheryl D. Guinn, Brentwood, Tennessee, for the Defendant-Appellant, Johnny Bernosa Young.

Robert E. Cooper, Jr., Attorney General and Reporter; Lacy E. Wilber, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Leticia F. Alexander, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

**Trial.** Precilla Crudup testified that on August 6, 2007, someone broke into her home and stole a surround sound system, two DVD players, several DVDs, and a half-carat diamond ring. She estimated the value of the items taken to be between $1500 and $2000. In addition, she said that it cost nearly $2000 to repair the window that the burglar broke to get into her home. Crudup stated that a detective later told her that Young, the Defendant-Appellant, was a suspect in her case. She confirmed that she did not know Young and had never given Young permission to be in her home.

Jeffrey Gibson, an officer in the Metropolitan Police Department, testified that he investigated the burglary that took place in Crudup's home on August 6, 2007. Officer Gibson collected fingerprints from the broken window pane and from a soda bottle at the Crudup residence. Although the fingerprints from the bottle were not usable, he was able to lift some identifiable prints from the window pane.

Donald Kahn, an officer with the Metropolitan Police Department, testified that he came in to contact with Young on September 10, 2007, and discovered that he had outstanding warrants for his arrest. He stated that Young would not give him any information regarding his work history or his address for the arrest report. Officer Kahn identified Young as the individual he arrested for the outstanding aggravated burglary and theft warrants.

Linda Wilson, a police identification analyst with the Metropolitan Police Department, was declared an expert in the field of latent fingerprint analysis and identification. Officer Wilson testified that she was given fingerprint evidence from the August 6, 2007 burglary at the Crudup residence. After uploading the fingerprint evidence to Automated Fingerprint Identification System database, Officer Wilson concluded that the fingerprints collected by Officer Gibson from the broken window pane at the Crudup residence belonged to Young.

**Sentencing Hearing.** At the sentencing hearing on October 15, 2008, the State did not present any testimony but entered the presentence report and certified copies of the judgments into evidence. Young was the only witness offered by the defense.

Young testified that he was working full-time at Waffle House prior to his arrest for aggravated burglary and theft. He said that prior to the offenses, he lived with his mother and his physically and mentally disabled sister. He said that he often helped care for his sister. Young stated that during the fourteen months that he had been incarcerated, he completed the Save and New Avenues programs and had been attending Narcotics Anonymous and Alcoholics Anonymous meetings. He also said that he worked in the kitchen from 8:00 a.m. to 8:00 p.m. five days a week and that he also worked as a barber on the weekends while incarcerated.

On cross-examination, Young stated that his presentence report was incorrect in that it stated that he had not worked at Waffle House since 1999. He did not challenge his criminal history as stated in the presentence report. He acknowledged that he committed his first theft when he was nineteen and committed later thefts at age twenty-four and thirty-one. He also admitted that he committed his first burglary in 1993. Young stated that he was forty-seven years old at the sentencing hearing. He claimed that he had worked at approximately five or six jobs since he was nineteen years old, despite the fact that the presentence report

showed that he had worked only at Waffle House. Young claimed that the individual who interviewed him for his presentence report did not "go back into history" and did not ask "how many jobs [he] had."

The trial court sentenced Young as a Range III, persistent offender to twelve years at forty-five percent for the aggravated burglary conviction and as a Range III, career offender to twelve years at sixty percent for the theft of property conviction, which were to be served consecutively for an effective sentence of twenty-four years in the Tennessee Department of Correction. The judgments were entered on October 15, 2008. Young filed an untimely notice of appeal on November 18, 2008.

## ANALYSIS

**I. Failure to File a Timely Notice of Appeal.** We must initially address the State's contention that Young failed to file a timely notice of appeal before addressing Young's other issues. The record shows that although Young's judgments were entered on October 15, 2008, he did not file his notice of appeal until November 18, 2008.

Tennessee Rule of Appellate Procedure 4(a) states that "the notice of appeal required by Rule 3 shall be filed with and received by the clerk of the trial court within 30 days after the date of entry of the judgment appealed from . . . ." However, this rule also states that "in all criminal cases the 'notice of appeal' document is not jurisdictional and the filing of such document may be waived in the interest of justice." Tenn. R. App. P. 4(a). This court, in deciding whether to grant a waiver regarding an untimely notice of appeal, "shall consider the nature of the issues for review, the reasons for the delay in seeking relief, and other relevant factors presented in each case." Michelle Pierre Hill v. State, No. 01C01-9506-CC-00175, 1996 WL 63950, at *1 (Tenn. Crim. App., at Nashville, Feb. 13, 1996). "Waiver is not automatic and should only occur when 'the interest of justice' mandates waiver. If this court were to summarily grant a waiver whenever confronted with untimely notices, the thirty-day requirement of Tennessee Rule of Appellate Procedure 4(a) would be rendered a legal fiction." State v. Rockwell, 280 S.W.3d 212, 214 (Tenn. Crim. App. 2007) (citing Michelle Pierre Hill, 1996 WL 63950, at *1).

Here, Young filed a notice of appeal on November 18, 2008, thirty-four days after entry of the judgments in this case. As the State notes, Young has failed to provide an explanation for his untimely filing. However, given that the notice of appeal was untimely by only four days, we conclude that the "interest of justice" is best served by granting a waiver in this case. See Tenn. R. App. P. 4(a); see also Crittenden v. State, 978 S.W.2d 929, 932 (Tenn. 1998).

**II. Consecutive Sentencing.** On appeal, Young contends that the trial court erred in ordering that he serve his felony sentences consecutively. Specifically, he argues that no evidence was presented to support the trial court's determination that he was "a professional criminal who has knowingly devoted [his] life to criminal acts as a major source of livelihood." T.C.A. § 40-35-115(b)(1) (2006). In response, the State argues that the trial court properly imposed a consecutive sentence on the basis of Young's extensive criminal record, which included over sixty convictions. See id. § 40-35-115(b)(2) (2006). We agree with the State.

On appeal, we must review issues regarding the length and manner of service of a sentence de novo with a presumption that the trial court's determinations are correct. T.C.A. § 40-35-401(d) (2006). Nevertheless, "the presumption of correctness which accompanies the trial court's action is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). The defendant has the burden of showing the impropriety of the sentence. Sentencing Comm'n Comments, T.C.A. § 40-35-401(d) (2006). If the trial court followed the statutory sentencing procedure, made adequate findings of fact that are supported by the record, and gave due consideration and proper weight to the factors and principles that are relevant to sentencing under the sentencing act, this court may not disturb the sentence even if a different result was preferred. State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991). Because the trial court properly considered the purposes and principles of the sentencing act pursuant to sections 40-35-102 and -103 and all relevant facts and circumstances, our review will be de novo with a presumption of correctness. In conducting our de novo review, this court must consider:

(1) The evidence, if any, received at the trial and the sentencing hearing;

(2) The presentence report;

(3) The principles of sentencing and arguments as to sentencing alternatives;

(4) The nature and characteristics of the criminal conduct involved;

(5) Evidence and information offered by the parties on the mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114;

(6) Any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and

(7) Any statement the defendant wishes to make in the defendant's own behalf about sentencing.

T.C.A. § 40-35-210(b) (2006); State v. Carter, 254 S.W.3d 335, 343 (Tenn. 2008).

Where a defendant is convicted of one or more offenses, the trial court has discretion to decide whether the sentences shall be served concurrently or consecutively. T.C.A. § 40-35-115(a) (2006). A trial court may order multiple offenses to be served consecutively if it finds by a preponderance of the evidence that a defendant fits into at least one of the seven categories in section 40-35-115(b) (2006). An order of consecutive sentencing must be "justly deserved in relation to the seriousness of the offense." T.C.A. § 40-35-102(1) (2006). In addition, the length of a consecutive sentence must be "no greater than that deserved for the offense committed." T.C.A. § 40-35-103(2) (2006).

Here, the trial court imposed consecutive sentencing because it determined that Young was both "a professional criminal who has knowingly devoted [his] life to criminal acts as a major source of livelihood" and "an offender whose record of criminal activity [was] extensive." T.C.A. § 40-35-115(b)(1), (2) (2006). This court has held that "[e]xtensive criminal history alone will support consecutive sentencing." State v. Adams, 973 S.W.2d 224, 231 (Tenn. Crim. App. 1997) (citing State v. Chrisman, 885 S.W.2d 834, 839 (Tenn. Crim. App. 1994)).

The trial court summarized Young's criminal history:

What we have here is a person who was convicted by a jury of aggravated burglary and theft of property, an individual who has a criminal history that dates back to 1981. He has been charged with over sixty different offenses. He's been convicted of at least ten felonies. Those felonies are burglary of a vehicle, aggravated burglary, and theft of property, the same kinds of offenses that he is charged with and convicted [of] in this particular case.

. . . .

The Court, also, has to look at 40-35-115, with regard to multiple convictions. And, pursuant to that, the defendant, in the Court's mind, and based on his record, is a professional who has knowingly devoted his life to criminal acts as a major source of livelihood. The defendant is an offender whose record of criminal activity is extensive.

The trial court held that Young's sentences, "as a result of his lengthy criminal history, [would] run consecutive[ly] to one another, for an effective sentence of twenty-four years."

We conclude that the trial court did not err in requiring Young to serve the felony sentences consecutively. A finding of any one of the factors in section 40-35-115(b) can justify the trial court's imposition of consecutive sentencing. The record on review shows that the trial court properly found by a preponderance of the evidence that Young was an offender "whose record of criminal activity [was] extensive." T.C.A. § 40-35-115(b)(2) (2006). At the sentencing hearing, the trial court exhaustively reviewed Young's substantial criminal history, which consisted of over sixty convictions including at least ten felonies, none of which were disputed by Young. Accordingly, upon our de novo review with a presumption of correctness, the trial court's judgments are affirmed.

## CONCLUSION

Upon our review, the trial court did not err in ordering Young's felony sentences to be served consecutively for an effective sentence of twenty-four years. Accordingly, the judgments of the trial court are affirmed.

_____
CAMILLE R. McMULLEN, JUDGE