# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
Assigned on Briefs June 7, 2011

### STATE OF TENNESSEE  v. KENNETH WEBSTER

**Appeal from the Criminal Court for Shelby County**
**No. 09-01749      Chris Craft, Judge**

**No. W2010-02670-CCA-R3-CD - Filed July 6, 2011**

The defendant, Kenneth Webster, appeals his Shelby County Criminal Court jury conviction of burglary, a Class D felony, which resulted in his career-offender, Department of Correction sentence of 12 years.   The defendant claims that the evidence was insufficient to support his conviction.  We disagree and affirm the criminal court's judgment.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the Court, in which NORMA MCGEE OGLE and ALAN E. GLENN, JJ., joined.

James P. DeRossit, IV (on appeal); and John L. Dolan (at trial), Memphis, Tennessee, for the appellant, Kenneth Webster.

Robert E. Cooper, Jr., Attorney General and Reporter; Rachel E. Willis, Assistant Attorney General; William L. Gibbons, District Attorney General; and Christ West, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

At trial, Officer Joseph Smith of the Memphis Police Department (MPD) testified that in October 2008 a surveillance camera monitored a storage building at the Children's Museum of Memphis.  The camera provided a remote, live feed to MPD, and Officer Smith was monitoring this live video feed on the evening of October 30, 2008, when he saw two individuals approach the building and climb through a window.  Officer Smith called for police officers to surround the building but maintained video surveillance of the building.  Other than the two individuals initially seen during Officer Smith's monitoring of the video, no one entered or left the building until the officers arrived and apprehended two persons.  Officer Smith, who did not go to the scene, testified that he could not identify either

of the persons who, based on the video feed, entered the building.

MPD Officer Randall Davis testified that he along with other officers responded to a call about a prowler at the Children's Museum warehouse. He arrived about one and one-half minutes after getting the call. Initially, four police cars arrived and occupied positions at all corners of the building. As other cars came, "they filled in in the middle." When the "K-9 Unit" and a representative of the Children's Museum arrived, officers sent the police dog into the building. Officer Davis testified that he and other officers maintained a perimeter until then. He saw no one leave the building from the time he arrived on the scene until, following the police dog's entry into the building, an individual exited feet-first through a window. The police "[g]rabbed" and arrested this individual as he came out of the window. Officer Davis identified the individual as the defendant.

MPD Officer Carl Sanford testified that he operated the "K-9 Unit" that responded to the Children's Museum call on October 30, 2008. Officer Sanford explained that the procedure in cases of the type presented on October 30, 2008 was to announce the presence of the police at the entry of the building, to inform the suspect of the impending entry of the police dog, and to send the dog into the building if the suspect did not come out. Officer Sanford testified that he followed the procedure on that night. When no one responded to his announcement, he released his dog, a 100-pound Belgian Malawa.[1] The dog entered a room inside the building and dragged out a man by the arm. Officer Sanford testified that the man was Dwight Upchurch and that he was immediately arrested. As Officer Sanford was leaving the building with Mr. Upchurch, he heard other officers "saying that the other suspect had jumped out the window." Afterward, Officer Sanford released the dog into the building a second time "just to make sure there wasn't anybody else." He searched the building and found no one else inside. On cross-examination, Officer Sanford testified that he could not recollect seeing the defendant and did not see him inside the building on October 30, 2008.

Dwight Upchurch testified that he and the defendant were living together in an abandoned house and that the defendant took him to see a building that the defendant thought was empty. They entered the building "looking for somewhere to sleep in there." "But," Mr. Upchurch testified, "when [he] got in there, [he] was looking around for something to get out of there." He agreed that he went in to "steal stuff." Both he and the defendant entered the building. He testified that it was too dark inside the building to see. He testified that "[t]he police pulled up" and that they "put the dog on [him]." He agreed that he had pleaded guilty to the charge of burglary.

---

[1]During cross-examination of Officer Sanford, defense counsel described the breed as "kind of like a long legged skinny German shep[herd]."

Clifford Drake testified that he was the director of operations for the Children's Museum. The museum's storage building stored exhibits and maintenance equipment such as backpack pressure washers, an electric leaf blower, a golf cart, and other tools. On October 30, 2008, Mr. Drake responded to a call to unlock the building for the police who were investigating a burglary at the site. He said that no one was authorized to be in the building at the time he was called. When he arrived, he unlocked the front door, and a policeman with a dog entered. Mr. Drake testified that neither the defendant nor Mr. Upchurch had permission to be in the building and that the building was not open to the public.

Based upon the foregoing evidence, the jury convicted the defendant of burglary.

On appeal, the defendant challenges the sufficiency of the evidence on the ground that the evidence showed only that he entered the Children's Museum's storage building to find a place to sleep.

On appeal, we review a claim of evidence insufficiency mindful that our standard of review is whether, after considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 324 (1979); *State v. Winters*, 137 S.W.3d 641, 654 (Tenn. Crim. App. 2003). This standard applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. *Winters*, 137 S.W.3d at 654. "[D]irect and circumstantial evidence should be treated the same when weighing the sufficiency of such evidence." *State v. Dorantes*, 331 S.W.3d 370, 381 (Tenn. 2011).

When examining the sufficiency of the evidence, this court should neither re-weigh the evidence nor substitute its inferences for those drawn by the trier of fact. *Winters*, 137 S.W.3d at 655. Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). Significantly, this court must afford the State the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. *Id.*

A person commits burglary who,

without the effective consent of the property owner:

(1) Enters a building other than a habitation (or any portion thereof) not open to the public, with intent to commit a felony, theft or assault;

(2) Remains concealed, with the intent to commit a felony, theft or assault, in a building;

(3) Enters a building and commits or attempts to commit a felony, theft or assault; or

(4) Enters any freight or passenger car, automobile, truck, trailer, boat, airplane or other motor vehicle with intent to commit a felony, theft or assault or commits or attempts to commit a felony, theft or assault.

T.C.A. § 39-14-402(a).

The defendant asserts that the only evidence presented at trial that reveals the defendant's intent upon entering the building was Mr. Upchurch's testimony that he and the defendant intended to find a better place to sleep than the abandoned house they were using. In essence, the defendant claims that the State failed to establish the culpability requirement of Code section 39-14-401(a)(1) or (2) – that he entered the building "with the intent to commit a felony, theft or assault."

The intent required for the offense of burglary may be established by circumstantial evidence. *Bollin v. State*, 486 S.W.2d 293, 296 (Tenn. Crim. App. 1972). A jury may infer criminal intent from the circumstances of the case. *See State v. Holland*, 860 S.W.2d 53, 59 (Tenn. Crim. App. 1993). Generally, when one unlawfully enters a building that contains valuable property, a jury may infer that the entry was made with the intent to commit a theft. *State v. Chrisman*, 885 S.W.2d 834, 838 (Tenn. Crim. App. 1994); *State v. Burkley*, 804 S.W.2d 458, 460 (Tenn. Crim. App. 1990). Our courts have said, "In the absence of an 'acceptable excuse,' a jury may reasonably and legitimately infer that by breaking and entering a building containing valuable property, a defendant intends to commit theft." *State v. Ingram*, 986 S.W.2d 598, 600 (Tenn. Crim. App. 1998).

Both of two legal propositions defeat the defendant's claim.

First, the trier of fact necessarily determines whether one's "excuse" for unlawful entry into a building is "acceptable," thus countering the inference that the entry into a building containing valuable property was for the purpose of theft. The jury as the trier

of fact heard the circumstantial evidence against the defendant, and it heard the testimony of Mr. Upchurch as well. Generally, a jury is empowered to accept a portion of a party's evidence or a witness' testimony if it deems it to be true while yet rejecting other portions of that evidence. *See, e.g.*, *State v. Crystal Miranda Kirby*, No. E2008-01862-CCA-R3-CD, slip op. at 14 (Tenn. Crim. App., Knoxville, May 7, 2010), *perm. app. denied* (Tenn. 2010). The jury could well have accepted the parts of Mr. Upchurch's testimony that were corroborated by the other witnesses while still rejecting the disclaimer portion of his testimony. In our opinion, Mr. Upchurch's testimony about the defendant's intent did not obliterate as a matter of law the inference that the defendant himself entered the building with the intent to commit theft.

Second, regardless of the defendant's intent upon entering the Children's Museum storage building, Mr. Upchurch testified that he – Mr. Upchurch – intended to steal property from the building. As such, the evidence established that, through the defendant's complicity in entering the building without permission, the defendant could be held accountable for Mr. Upchurch's burglary. Our law provides:

> A person is criminally responsible for an offense committed by the conduct of another, if:
>
> (1) Acting with the culpability required for the offense, the person causes or aids an innocent or irresponsible person to engage in conduct prohibited by the definition of the offense;
>
> (2) Acting with intent to promote or assist the commission of the offense, or to benefit in the proceeds or results of the offense, the person solicits, directs, aids, or attempts to aid another person to commit the offense; or
>
> (3) Having a duty imposed by law or voluntarily undertaken to prevent commission of the offense and acting with intent to benefit in the proceeds or results of the offense, or to promote or assist its commission, the person fails to make a reasonable effort to prevent commission of the offense.

T.C.A. § 39-11-402. In the present case, the trial court instructed the jury on criminal responsibility for the conduct of another. Such a theory of the offense served as an appropriate alternative to a theory that the defendant himself intended to steal property. *See State v. Lemacks*, 996 S.W.2d 166, 170 (Tenn. 1999) ("As reflected in this case, criminal responsibility is not a separate, distinct crime. It is solely a theory by which the State may

prove the defendant's guilt of the alleged offense . . . based upon the conduct of another person."). As such, we believe that the jury was justified in basing the defendant's conviction of burglary on the theory of complicity, or criminal responsibility.

        Accordingly, we affirm the judgment of the trial court.

_____

JAMES CURWOOD WITT, JR., JUDGE