IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs December 4, 2012

## STATE OF TENNESSEE v. CARLOS BURRIS

**Appeal from the Circuit Court of Madison County**
**Nos. 11-155, 11-357    Roy B. Morgan, Jr., Judge**

**No. W2012-00026-CCA-R3-CD  - Filed December 27, 2012**

Carlos Burris ("the Defendant") appeals his convictions in two separate trials for attempting to obtain a controlled substance by fraud and driving on a suspended license, fourth offense. The trial court sentenced the Defendant to six years for the attempting to obtain a controlled substance by fraud conviction and to eleven months, twenty-nine days for the driving on a suspended license conviction. The trial court also ordered that the two sentences run consecutively. On appeal, the Defendant contends that the evidence presented at both trials was insufficient to support his convictions. Additionally, the Defendant contends that his sentence for the first conviction was excessive and that the trial court erred by running the two sentences consecutively. After a thorough review of the record and the applicable law, we affirm the Defendant's convictions and sentences.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments**
**of the Circuit Court Affirmed**

JEFFREY S. BIVINS, J., delivered the opinion of the Court, in which ALAN E. GLENN, and ROBERT W. WEDEMEYER, JJ., joined.

Joseph T. Howell (on appeal and at trial in No. 11-357) and Susan Korsnes, Assistant Public Defender (at trial in No. 11-155), Jackson, Tennessee, for the appellant, Carlos Burris.

Robert E. Cooper, Jr., Attorney General and Reporter; Benjamin A. Ball, Assistant Attorney General; James G. Woodall, District Attorney General; and Jody Pickens, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

## Factual and Procedural Background

A Madison County Grand Jury indicted the Defendant on April 4, 2011, on one count of obtaining or attempting to obtain a controlled substance by misrepresentation, fraud, forgery, deception or subterfuge. On July 5, 2011, a Madison County Grand Jury indicted the Defendant on one count of driving on a canceled, suspended, or revoked license; one count based on prior convictions for driving on a canceled, suspended, or revoked license; and one count of violating the financial responsibility law. The Defendant was tried before a jury on July 21, 2011, in case no. 11-155, on his indictment of obtaining or attempting to obtain a controlled substance by fraud. He later was tried by another jury on September 30, 2011, in case no. 11-357, on his indictment for driving on a canceled, suspended, or revoke license; prior offender for driving on a canceled, suspended, or revoked license; and violating the financial responsibility law. At the trial in case no. 11-357, the Defendant stipulated to his prior convictions for driving on a suspended or revoked license.

### *Proof at Trial*

### Case No. 11-155

Heather Goslee, a certified pharmacy technician at Walgreen's Pharmacy in Jackson, Tennessee, testified that she works at a location directly across the street from the emergency room of the Jackson-Madison County General Hospital. Her duties include "greet[ing] the customer, tak[ing] the prescription, ask[ing] for the birth date, all of their information, insurance, scan[ning] the prescription in, and fill[ing] the prescription. Send it down to the pharmacist, the pharmacist there verifies and then we check the patient out." She was working on January 11, 2011, and on that date she spoke with the Defendant. The Defendant dropped off a prescription for Lortab that was on a form from the emergency room and authorized by Dale Dawson. Goslee approximated that in her sixteen years on the job she had seen a prescription from Dawson thousands of times.

As she began typing in the prescription, Goslee noticed that the number five (5) was written out in parentheses next to the written numeric dosage. However, the written numeric dosage was "7.5 mg." The fact that the "five" was spelled out triggered her to believe that someone had tampered with the strength of the prescription. According to her protocol, she called Dawson to verify the alteration in the prescription. Dawson responded that he wanted her to call the police, so she notified the Jackson Police Department. Once the police arrived, the officers spoke with the Defendant and took him into custody.

Goslee testified that Lortab is a hydrocodone for pain, which is a controlled substance. Lortab has a five (5) milligram dosage, a seven point five (7.5) milligram dosage, and a ten (10) milligram dosage. According to her records, she entered the prescription into her computer at 5:00 p.m.

Dale Dawson, a physician's assistant in the Jackson-Madison County General Hospital Emergency Room, testified that he had worked in that capacity for ten and a half (10 1/2) years. He saw the Defendant in the emergency room on January 11, 2011, for a toothache and a rash. Dawson informed the Defendant that he was prescribing him a dosage of five milligrams of Lortab, and the Defendant responded that he wanted a dosage of seven point five (7.5) milligrams. According to Dawson, he refused to increase the strength of the prescription.

According to the emergency room records, the Defendant checked into the emergency room at 12:50 p.m. and was discharged at 4:25 p.m. on January 11. Dawson identified the prescription that he wrote for the Defendant, which included the date, the medication Lortab, and "five" written in parentheses to indicate the dosage. Dawson explained that he routinely spells out the dosage in parentheses so that it cannot be changed.

At this point, the State rested its proof. The defense then proceeded with its proof, and the Defendant testified that he did not alter his prescription for Lortab. He denied asking Dawson to prescribe Lortab at the seven point five (7.5) milligram dosage and, instead, insisted that he told Dawson he preferred Ibuprofen. He acknowledged, however, that he was prescribed seven point five (7.5) milligram Lortab a month before the incident in question. At the conclusion of the Defendant's testimony, the defense rested, and the State recalled Dawson as a rebuttal witness.

Dawson testified that the Defendant never requested that Dawson prescribe Ibuprofen instead of Lortab. Dawson agreed that, had the Defendant actually requested Ibuprofen, it would have been easier to prescribe because, unlike Lortab, Ibuprofen is not a narcotic. On cross-examination, Dawson estimated that he sees approximately thirty to forty patients a day.

At the close of proof, the jury deliberated and convicted the Defendant of attempting to obtain a controlled substance by fraud, a Class D felony, and imposed a fine of $2,000. At the sentencing hearing, the defense stipulated to the Defendant being sentenced as a Range II offender. As a Range II offender, a Class D felony is punishable by a sentence of between four and eight years. See Tenn. Code Ann. § 40-35-112(b)(4) (2010). In addition to the two prior felony convictions used to establish the Defendant as a Range II offender, the trial court also considered the Defendant's fifteen prior misdemeanor convictions in

finding that the sentence should be enhanced pursuant to the statutory enhancement factor of prior criminal convictions. See Tenn. Code Ann. § 40-35-114(1) (2010). Additionally, the trial court found applicable the eighth statutory enhancement factor, which considers whether "[t]he defendant, before trial or sentencing, failed to comply with the conditions of a sentence involving release into the community." Tenn. Code Ann. § 40-35-114(8). Accordingly, the trial court sentenced the Defendant to six years at 35%. The court also required that the Defendant have no direct or indirect contact with the witnesses in this case and that the Defendant pay $50 per month to the clerk's office beginning sixty days after his release until completion of his payment for his fine and costs. Finally, the trial court imposed the $2,000 fine set by the jury.

Case No. 11-357[1]

At trial in case no. 11-357 on September 30, 2011, Investigator Nathaniel Shoate of the Madison County Sheriff's Department testified that he was assigned to the Jackson-Madison County Metropolitan Narcotics Unit ("Metro Narcotics Unit"). Additionally, he served on the U.S. Marshal's Fugitive Task Force. On September 22, 2010, he was at a BP gas station in Jackson-Madison County at sometime between approximately 9:00 or 10:00 p.m. As he exited his vehicle and began approaching the front of the store, he noticed a black male, identified at trial as the Defendant, sitting in the driver's side of a black, four-door Mercury Marquis. The Defendant appeared to have a bag of marijuana and was "rolling a marijuana joint." Investigator Shoate also noticed a female sitting in the passenger's side of the vehicle. He entered the store momentarily then returned to his vehicle to put on a vest because he was in plain clothes. While Investigator Shoate asked over the radio if any other officers were in the area, he noticed that the Mercury Marquis was beginning to drive away from the gasoline pump. At that point, Investigator Shoate activated his emergency equipment and stopped the vehicle approximately twenty feet from the gasoline pumps.

Investigator Shoate approached the vehicle and asked the Defendant to step outside. According to Investigator Shoate, the Defendant initially was hesitant but eventually exited the vehicle. Investigator Shoate explained to the Defendant what he had observed. The Defendant denied having anything, and he consented to the search of the vehicle he was driving. Investigator Shoate checked the Defendant's driver's license and, upon doing so, found that his license was suspended in Tennessee. Additionally, the Defendant could not produce any proof of vehicle insurance.

---

[1] The trial transcript indicates that the Defendant, prior to trial in this case, filed a "Motion to Suppress and Dismiss Indictment." The record reflects that the trial court denied the motion by written order. The transcript of the suppression hearing was not included in the record before this Court.

On cross-examination, Investigator Shoate stated that, when he initially observed the Defendant, the vehicle was in a well-lit area, and Investigator Shoate was closest to the driver's side of the vehicle. He also stated that, upon a search of the Defendant's vehicle, the officers did not find marijuana in the vehicle. He could not recall the identity of the female in the vehicle and also did not remember the extent to which she was searched. He did not remember female officers being present at the scene in order to conduct a complete pat-down search on the female passenger. He acknowledged that he was the only officer on the scene who observed the Defendant in possession of marijuana.

Sergeant Chris Long of the Madison County Sheriff's Department testified that, at the time of trial, he had been assigned to the Metro Narcotics Unit for approximately five years. On September 22, 2010, he assisted Investigator Shoate in the stop near the BP gas station. When Sergeant Long arrived at the scene, Investigator Shoate was exiting his vehicle and approaching the stopped vehicle. Sergeant Long then witnessed a man he identified as the Defendant exit the driver's side of the stopped vehicle. He also observed a female exit the passenger's side of the vehicle.

Sergeant Long noted that, before arriving at the scene, he first drove by the gas station and noticed the Defendant's vehicle parked at one of the gas pumps. By the time he turned around and arrived at the scene, the vehicle was stopped approximately thirty to fifty feet from the gas pumps. When asked whether the officers searched the female passenger's person, given the circumstances of the case, Sergeant Long responded, "To the best of our ability with what we had present, yes, sir, I would say we did." Following Sergeant Long's testimony, the State rested its proof.

The defense moved for judgment of acquittal, and the court denied the motion. The Defendant proceeded to testify that, on September 22, 2010, he had a suspended license. However, he denied that he was driving a vehicle on the night in question. He stated that he accompanied a friend who drove to the BP gas station to buy cigarettes. The Defendant denied rolling marijuana cigarettes and stated that he did not smoke marijuana. Additionally, he denied that Investigator Shoate asked before initiating a search of the vehicle. After not finding anything from the search, Investigator Shoate wrote the Defendant a citation for driving on a suspended license.

On cross-examination, the Defendant denied that, when Investigator Shoate activated his lights, he was in the vehicle. In fact, according to the Defendant, the vehicle was still at the gas pump and not approximately thirty to fifty feet from the gas pump. The Defendant agreed that he was convicted on August 29, 2011, for attempt to obtain a controlled substance by fraud. At the close of proof, the jury deliberated and returned a verdict of guilty

for driving on a suspended license and set a fine of $500. The jury also found the Defendant guilty of violating the financial responsibility law and set a fine of $100.

The Defendant stipulated under oath to his prior convictions for driving on a suspended or revoked license. The trial court merged the Defendant's conviction for driving on a suspended license into the conviction based on his prior convictions and entered a judgment for driving on a suspended license, fourth offense. The trial court then sentenced him to eleven months, twenty-nine days for his conviction for driving on a suspended license, fourth offense, and thirty days for his conviction of violating the financial responsibility law. The trial court ran these two sentences concurrently to each other but consecutive to the Defendant's six-year sentence in case no. 11-155. Additionally, the trial court imposed a fine of $1,500 and suspended the Defendant's driving privileges for an additional year.

The Defendant filed motions for new trials for his convictions for attempting to obtain a controlled substance by fraud and driving on a suspended license, challenging the sufficiency of the evidence and the sentencing for both convictions. The trial court subsequently denied both motions. The Defendant also filed a Motion for Subpoena Duces Tecum to obtain a copy of any video surveillance from the pharmacy, which the trial court also denied. The Defendant now appeals, challenging the sufficiency of the evidence for both convictions. Regarding sentencing, he asserts that his sentence was excessive for his attempting to obtain a controlled substance by fraud conviction. Additionally, he contends that the trial court erred in running his sentence for driving on a suspended license conviction consecutive to his sentence for attempting to obtain a controlled substance by fraud conviction.

**Analysis**

*Sufficiency of the Evidence*

Our standard of review regarding sufficiency of the evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). See also Tenn. R. App. P. 13(e). After a jury finds a defendant guilty, the presumption of innocence is removed and replaced with a presumption of guilt. State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992). Consequently, the defendant has the burden on appeal of demonstrating why the evidence was insufficient to support the jury's verdict. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

The appellate court does not weigh the evidence anew. Rather, "a jury verdict, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves

all conflicts" in the testimony and all reasonably drawn inferences in favor of the State. State v. Harris, 839 S.W.2d 54, 75 (Tenn. 1992). Thus, "the State is entitled to the strongest legitimate view of the evidence and all reasonable or legitimate inferences which may be drawn therefrom." Id. (citation omitted). This standard of review applies to guilty verdicts based upon direct or circumstantial evidence. State v. Dorantes, 331 S.W.3d 370, 379 (Tenn. 2011) (citing State v. Hanson, 279 S.W.3d 265, 275 (Tenn. 2009)). In Dorantes, our Supreme Court adopted the United States Supreme Court standard that "direct and circumstantial evidence should be treated the same when weighing the sufficiency of such evidence." Id. at 381. Accordingly, the evidence need not exclude every other reasonable hypothesis except that of the defendant's guilt, provided the defendant's guilt is established beyond a reasonable doubt. Id.

The weight and credibility given to the testimony of witnesses, and the reconciliation of conflicts in that testimony, are questions of fact. State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). Furthermore, it is not the role of this Court to reevaluate the evidence or substitute its own inferences for those drawn by the jury. State v. Winters, 137 S.W.3d 641, 655 (Tenn. Crim. App. 2003) (citations omitted).

Attempting to Obtain a Controlled Substance by Fraud

Pursuant to Tennessee Code Annotated section 53-11-402(a)(3) (Supp. 2009), "[i]t is unlawful for any person knowingly or intentionally to[] . . . [a]cquire or obtain, or attempt to acquire or attempt to obtain, possession of a controlled substance by . . . fraud." A defendant who violates this statute commits a D felony. Id. § 402(b)(1). Lortab is a Schedule III controlled substance. See id. § 39-17-410(e) (2010).

The evidence established at trial that on January 11, 2011, the Defendant went to the emergency room at the Jackson-Madison County General Hospital for a toothache and a rash. Dawson, a physician's assistant, wrote the Defendant a prescription for Lortab at a dosage of five milligrams. According to Dawson, the Defendant requested a dosage of seven and a half milligrams, but Dawson would not agree to increase the dosage. The Defendant was discharged from the emergency room at approximately 4:25 p.m. according to computer records at the hospital.

Then, at approximately 5:00 p.m., the Defendant entered Walgreen's located across the street from the emergency room. Goslee, a pharmacy technician, testified that the Defendant approached her with a written prescription to fill. As she began entering the information, she noticed that, although the numeric dosage read "7.5 mg," right next to the numeric dosage,"five" was spelled out in parentheses. This discrepancy triggered her to believe that the original dosage had been changed. Accordingly, she called Dawson to verify

the dosage. Based on her phone call, Dawson instructed her to call the police. The Defendant denied at trial that he altered the dosage.

It is the jury's prerogative to find the Defendant's testimony not credible, as the jury implicitly did in finding the Defendant guilty. See Winters, 137 S.W.3d at 655. The jury had sufficient evidence to find that the Defendant knowingly or intentionally altered his prescription in order to attempt to acquire a controlled substance. Accordingly, the State presented sufficient evidence for the jury to convict the Defendant of this offense. Thus, he is entitled to no relief on this issue.

## Driving on a Suspended License

The Defendant also challenges the sufficiency of the evidence for his conviction of driving on a suspended license. It is unlawful for a person to

> drive[] a motor vehicle within the entire width between the boundary lines of every road way publicly maintained that is open to the use of the public for purposes of vehicular travel, or the premises of any shopping center, manufactured housing complex or apartment house complex or any other premises frequented by the public at large at a time when the person's privilege to do so is cancelled, suspended, or revoked.

Tenn. Code Ann. § 55-50-504 (2008). Additionally, "[a] second or subsequent violation of [this subsection] is a Class A misdemeanor." Id. § 504(a)(2).

At trial, the evidence established that Investigator Shoate was at a BP gas station in Jackson-Madison County on the evening of September 22, 2010. As he neared the front of the store, he observed the Defendant sitting in the driver's side of a Mercury Marquis. According to Investigator Shoate, the Defendant appeared to have a bag of marijuana and was "rolling a marijuana joint." Investigator Shoate eventually returned to his vehicle to put a vest over his plain clothes and request backup over the radio. He noticed that the Mercury Marquis was beginning to drive away, so he initiated his emergency equipment and stopped the vehicle approximately twenty feet from the gas pumps.

Investigator Shoate asked the Defendant to step out of the vehicle, and the Defendant, although hesitant, eventually did so. Although a search did not reveal any marijuana, a check of the Defendant's driver's license disclosed that the Defendant's license was suspended in Tennessee. Additionally, the Defendant could not produce any proof of vehicle insurance.

The Defendant testified that his driver's license was suspended on September 22, 2010, but he denied that he was driving that evening.

Once again, the credibility of witnesses is a determination for the jury, and we will not disturb the jury's implicit credibility findings. See Winters, 137 S.W.3d at 655. The evidence is sufficient to establish that the Defendant was driving on a suspended license. Thus, the Defendant is entitled to no relief on this issue.

*Sentencing*

The Defendant challenges his sentences for his convictions for attempting to obtain a controlled substance by fraud and for driving on a suspended license.

When the record establishes that the trial court imposed a sentence within the appropriate range that reflects a "proper application of the purposes and principles of our Sentencing Act," this Court reviews the trial court's sentencing decision under an abuse of discretion standard with a presumption of reasonableness. State v. Bise, 380 S.W.3d 682, 707 (Tenn. 2012). "[A] trial court's misapplication of an enhancement or mitigating factor does not remove the presumption of reasonableness from its sentencing decision." Id. at 709. This Court will uphold the trial court's sentencing decision "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." Id. at 709-10. Moreover, under those circumstances, we may not disturb the sentence even if we had preferred a different result. See State v. Carter, 254 S.W.3d 335, 346 (Tenn. 2008). The party appealing the sentence has the burden of demonstrating its impropriety. Tenn. Code Ann. § 40-35-401, Sent'g Comm'n Cmts. (2006); see also State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991).

Attempting to Obtain a Controlled Substance by Fraud

The Defendant claims that his sentence is excessive for his conviction of attempting to obtain a controlled substance by fraud. Furthermore, he asserts that the trial court erred in its application of two statutory enhancement factors.

At the sentencing hearing, the defense stipulated to the Defendant being sentenced as a Range II offender. For a Class D felony, the applicable sentencing range is four to eight years. See Tenn. Code Ann. § 40-35-112(b)(4). The trial court found that the first enhancement factor, which considers the defendant's "previous history of criminal convictions or criminal behavior," applied. See Tenn. Code Ann. § 40-35-114(1). In so finding, in addition to the two felonies used to establish the applicable range, the trial court considered the Defendant's fifteen prior misdemeanor convictions. The trial court also

applied the eighth enhancement factor that "[t]he defendant, before trial or sentencing, failed to comply with the conditions of a sentence involving release into the community." Id. § -114(8).

The presentence report reflects that the Defendant has an extensive criminal history. The record, however, does not clearly establish that the Defendant, at some point before trial or sentencing, violated the terms of his probation. Nevertheless, even assuming that the eighth factor did not apply, we discern no error in the sentence imposed by the trial court. The trial court sentenced the Defendant to six years, the middle of the statutory range, which was well within its prerogative given the Defendant's extensive history of criminal convictions. Accordingly, the trial court did not abuse its discretion. Therefore, the Defendant is entitled to no relief on this issue.

## Driving on a Suspended License

The Defendant also claims that the trial court erred in imposing consecutive sentencing with regard to the Defendant's conviction of driving on a suspended license, fourth offense.

The Criminal Sentencing Reform Act of 1989 provides that a trial court may impose consecutive service if it finds by a preponderance of the evidence that a "defendant is an offender whose record of criminal activity is extensive." Tenn. Code Ann. § 40-35-115(b)(2) (2006). In addition to this criterion, "consecutive sentencing is guided by the general sentencing principles providing that the length of a sentence be 'justly deserved in relation to the seriousness of the offense' and 'no greater than that deserved for the offense committed,'" although specific factual findings are not necessary. State v. Imfeld, 70 S.W.3d 698, 708 (Tenn. 2002); see also Tenn. Code Ann. §§ 40-35-102(1), -103(2) (2006); In re Sneed, 302 S.W.3d 825, 828-29 (Tenn. 2010). The determination of whether to impose consecutive sentences pursuant to Tennessee Code Annotated section 40-35-115(b) is "a matter addressed to the sound discretion of the trial court." State v. Hastings, 25 S.W.3d 178, 181 (Tenn. Crim. App. 1999).

In determining to run his sentence for driving on a suspended license consecutively to his sentence for attempting to obtain a controlled substance by fraud, the trial court found that the Defendant had an extensive record of criminal convictions.

In this case, the presentence report reflects that the Defendant's record of criminal activity is extensive. This Court has held that "[e]xtensive criminal history alone will support consecutive sentencing." See State v. Adams, 973 S.W.2d 224, 231 (Tenn. Crim. App. 1997) (citing State v. Chrisman, 885 S.W.2d 834, 839 (Tenn. Crim. App. 1994)); see also State v.

Gann, 251 S.W.3d 446, 464 (Tenn. Crim. App. 2007). The trial court found that the Defendant had at least three prior felony convictions, as well as twenty-two prior misdemeanor convictions, a finding which is supported by the record. Thus, we hold that the trial court properly imposed consecutive sentencing in a manner consistent with the purposes, principles, and goals of the Sentencing Act. Accordingly, the Defendant is entitled to no relief on this issue.

## **Conclusion**

For the reasons articulated above, we affirm the Defendant's convictions and sentences.

_____
JEFFREY S. BIVINS, JUDGE